## LEONARDO GARZA v. J. N. BAKER AND WIFE.

(Motion No. 756.)

1. JURISDICTION OF SUPREME COURT.—The supreme court has no appellate jurisdiction, except when the district court has rendered a final judgment disposing of the subject matter of controversy; and so long as a judgment of the district court remains under its control, it is not that character of final judgment which can be made the subject of direct revision by the supreme court.

2. DISTRICT COURT — JURISDICTION.—In its own peculiar sphere the district court is independent and supreme in its power, and the supreme court has no authority to inquire into or revise its judgments during the period of time when, by its very organization and constitution, the district court still has power to alter or change such judgments.

3. CASE APPROVED.—Blum v. Wettermark, infra, approved.

4. STATUTE CONSTRUED.—The act of January 27, 1842, which authorized the issuance of execution under circumstances named, during the term, could not operate to deprive the district court of its inherent power as a court to revise and change its own action and orders during the term, and grant a new trial if necessary, notwithstanding the issuance of execution before the rising of the court, and the fact that a new trial had been refused and notice of appeal given.

5. STATUTE CONSTRUED.—Arts. 2268 and 2269, R. S., simply regulate in substantial accordance with the act of June 4, 1873 (Pasch. Dig., art. 3772), the issuance of execution during the term of the court when the judgments on which they are based were rendered.

6. STATUTES CONSTRUED.—Art. 1034, R. S., is but a substantial re-enactment of the law as it has always existed from the earliest organization of the supreme court. The words used in that article, "next succeeding term" (of the district court) "when the appeal was perfected," evidently were not intended to convey the idea that the twenty days after the appeal bond was given were to be computed from that particular day in the term of the district court when the appeal was perfected, if it was (as it frequently was) perfected during the term; but the time was, it would seem, intended to be computed from the last day of the term of the district court during which term the appeal was perfected.

7. JURISDICTION.—The district court has during its term complete and perfect control over all its orders and judgments, and the appellate power of the supreme court cannot be exercised as to them until the district court finally adjourns.

APPLICATION for *mandamus.* From Bexar county.

This was an application to the supreme court for *mandamus,* in which it was stated that Leonardo Garza, as plaintiff, on the 12th of December, 1882, recovered in the district court of Bexar county a judgment against the applicants for the restitution of certain premises, and for $250 damages; that on the 14th of December, 1882, the plaintiff filed a written motion to reform the judgment (unnecessary to be here explained), and which was overruled; that plaintiff thereupon gave notice of appeal from that portion of the judgment which related to damages, and defendants (the applicants for *mandamus)* gave notice of appeal from the whole of the judgment; that

the applicant, on the 21st day of December, A. D. 1882, executed and delivered to the clerk a good and sufficient appeal bond, whereby he claimed that the jurisdiction of the supreme court over the case attached; that the clerk refused to make out a transcript, and the applicant obtained from a justice of the supreme court, on a showing there made, a writ of *mandamus* to compel the making out of that transcript; that on the 21st of December, 1882, Garza applied to the district court by motion in the case, to compel the clerk to issue a writ of restitution of the premises, which was refused; that on the 29th of December, A. D. 1882, the plaintiff Garza filed in the district court a motion to set aside the judgment in the cause, and for a new trial, which was granted on the 10th of January, 1883; that petitioner, after filing his appeal bond, made out and presented to the attorneys of Garza a statement of facts proved on the trial, who declined to sign or agree to them, and indorsed their refusal thereon, and the district judge who tried the cause declined to sign a statement of facts for reasons given, and which appear in his return. That the jurisdiction of the supreme court had then attached, by reason of the execution of the bond, etc.

The applicant stated that he was without remedy except by *mandamus*, which he asked, commanding the district judge to certify statement of facts proved on the trial, and to desist from further proceedings during the pendency of the appeal, etc.

The application was sworn to, and had attached to it exhibits properly certified of the proceedings referred to.

Process issued to the district judge, the attorneys, etc., requiring them to appear not later than three days after service of process, and show cause why the motion for *mandamus* should not be granted.

The following is the return to the writ, filed in the supreme court on the 29th of January, by the district judge:

" *To the Honorable the Supreme Court of the State of Texas:*

"The district judge of the twenty-second judicial district of the state of Texas, for return to the alternative writ of *mandamus* heretofore issued by said court against him on application made by the Bakers, says there was a case tried in the district court of the county of Bexar, wherein one Garza was plaintiff and the said Bakers were the defendants, and said cause was tried at the December term of said court, which December term is still in session.

"This respondent further says, that the verdict of the jury was in favor of the plaintiff, and that afterwards plaintiff on motion sought to set aside a portion of said verdict and have a new trial on the

question of damage; said motion was refused, whereupon both plaintiff and the defendants gave notice of appeal.

"This respondent further says, that afterwards the plaintiff had leave to withdraw his notice of appeal. He then made a motion for a new trial, which was granted.

"This respondent further says, that several days after a new trial of said cause was granted, a paper purporting to be a statement of facts in said cause was presented on the part of the defendants to this respondent for his approval; said paper was neither read or approved by this respondent, for the reason that this verdict had been set aside.

"This respondent further says, that although said cause of Garza v. Bakers was tried by a jury, no motion for a new trial was ever made by the defendants.

"Wherefore this respondent prays that the honorable court will make such order in the premises as shall be required by the law, and that this respondent may be hence dismissed.

"G. H. Noonan, Respondent."

So much of the response to the writ as Garza and his attorney made, which it is deemed proper to refer to, was as follows:

On December 12, 1882, judgment was rendered for respondent Garza, and against relators, for restitution and for $250 damages; that respondent Garza, considering the verdict erroneous as to the damages, having vainly moved at the time of its rendition to have it corrected by the jury, again moved to have the finding "as to the damages" only set aside. That the district court, holding the verdict to be indivisible, declined to set it aside in part, and on December 16, 1882, overruled respondent's motion; that respondent then moved under arts. 2454 and 2462, that a writ of restitution issue, which motion the district court overruled on December 26, 1882; that respondent being denied all relief he deemed himself entitled to under the statute, which he had been told provided a "speedy" remedy, then with leave of court amended his original motion for a new trial, and moved to set aside the verdict *in toto*, as well as also the judgment, which motion was granted by the district court on January 10, 1883, the term of said court not having yet expired. The district court, in the opinion of respondent, has control of its judgment until the close of the term, and that respondent Garza should not be debarred of his right to have the verdict and judgment set aside directly on his motion before the court of original jurisdiction, instead of being compelled to seek that same relief indirectly by an expensive and perhaps not speedily determined appeal to this court. . . .

*Bethel Copewood* and *Ogden & Ogden*, for the motion.

No case will be found where the successful party has pressed his right to have the judgment executed till he has compelled the defeated party to perfect his appeal by filing an appeal and supersedeas bond, and has then been permitted to have the judgment set aside to defeat the appeal against the will and consent of the appellant.

The jurisdiction of this court fully attached on the filing of the bond, and the statute provides no other or further step in the district court to maintain it.

Was not that jurisdiction the power to hear and fully determine the cause on appeal? If so, by what law has the court *a quo* acquired the power to divest it and render it nugatory? Withers *v.* Patterson, 27 Tex., 491.

The statute, as it was aforetime, provided for the execution to issue after the rising of the court. Pasch. Dig., art. 3772. Article 2268, R. S., provides that "after the expiration of twenty days from and after the rendition of final judgment in the district or county court, and after the overruling of any motion therein for a new trial or in arrest of judgment, if no supersedeas bond or appeal or writ of error has been filed and approved, the clerk shall issue execution upon such judgment upon the application of the successful party."

If the rule that the judgment is in the breast of the judge till the court rises still applies, then we have the strange fact of execution issuing upon, and levy and sale satisfying perhaps a judgment not final, but still *in fieri*, and which may never be a final judgment. If this rule was universal at common law, was it any more so than that no execution could issue to satisfy a judgment until after the court adjourned and the judgment was placed in the roll. Were not the two but parts of one universal rule? Is not the execution "the act of carrying into effect the final judgment of a court or other jurisdiction?" Bouv. Dic., "Execution," "Practice."

The appeal was perfected and the judgment stayed when the bond was approved and filed (R. S., art. 1406), and it then became the duty of the clerk to make out the transcript. Art. 1410.

These three articles of the Revised Statutes do seem to change the common law rule of the judgment remaining in the breast of the court until it adjourns and makes it final.

Article 1034 of the Revised Statutes provides for every contingency that can possibly arise in relation to filing the transcript, and art. 1035 provides for the opposite party to have the judgment affirmed on certificate, if the transcript be not filed, etc.

WEST, ASSOCIATE JUSTICE.— This court has no appellate jurisdiction except where the district court has rendered a judgment, final in its character, disposing of the subject matter of the controversy.

So long as the judgment of that court remains under its control, and subject to be altered or set aside by it, it is not in its nature that character of final judgment which can be made the subject of direct revision by this court. R. S., art. 1380; Const., art. V, sec. 3.

The appellate jurisdiction of this court cannot, in the nature of things, attach until the judgment sought to be passed under review has become final and conclusive in fact, as well as in form and name. The district courts of this state have, from the nature of the broad grant to them in the constitution of large original judicial power in its fullest sense, very extensive and exclusive jurisdiction, and it must follow that the supreme court, having only appellate authority, is as powerless as the lowest court in the state to control or revise its action, either on appeal or writ of error, until the district court has exhausted the power granted to it by the constitution as the trustee and sole depositary of that valuable and extensive portion of the judicial authority with which it is clothed by the organic law, and in the just and lawful exercise of which it is as independent of, and as free from the control of this court, as it is and ought to be free from the control of the executive and legislative branches of the government. While it is deliberating upon the subject matter before it for decision, while it is exercising its judicial functions, its power to decide what shall be its ultimate and final determination of the pending controversy is absolutely beyond the control of this court. When it has performed this high duty, when its grasp upon the subject matter of the suit has relaxed, and when its power over its orders and action ceases by the operation of the laws and constitution longer to exist, then, and not before, can the revisory jurisdiction of this court be called into exercise, by virtue of the grant of appellate judicial power given to it by the constitution and laws. In its own peculiar sphere, the district court is itself independent and supreme in its power, and this court has no authority to inquire into or revise its judgments during the period of time when, by its very organization and constitution, it still has the power to alter or to change them. This has been the uniform decision and practice of this court with reference to judgments of the district court from its first organization.

This question, which is admitted to be one of doubt and difficulty, has been so fully treated in the recent opinion of this court in Blum

v. Wettermark, that we do not deem it necessary further to discuss the matter.

This whole subject has, however, been again fully considered by us, and the additional arguments and authorities produced bearing on the question, including those cited from the supreme court of the United States, have all been examined, and we see no reason to doubt the correctness of the conclusions arrived at by the court in the case of Blum v. Wettermark.

In addition to the clauses of the statute and cases there cited, we will in this connection call attention briefly to a few other clauses that were no doubt then considered by the court, though not mentioned in the opinion.

It is now contended that arts. 2268 and 2269, R. S., have by some means not fully explained, worked a change in the old law upon which the former decisions of this court relied on in Blum v. Wettermark were based. These articles simply regulate, substantially in accordance with the act of June 4, 1873 (Pasch. Dig., art. 3772), the issuance of execution during the term of the court when the judgments on which they are based were rendered. The old act of 27th of January, 1842, in its third section (Hart. Dig., art. 1325), provides that if a defendant in a judgment that has been rendered during the term of the court is about to remove his property beyond the county, execution may issue on such judgment during term time. Under this act, it might issue not only before the final adjournment of the court, but during the term, either before or after a motion for new trial had been made and refused, and notice of appeal given. It has never been supposed that this provision operated in the least to deprive the district court of that inherent power which it has as a court to revise and change its own action and orders during the term, and grant a new trial if necessary, notwithstanding the issuance of execution before the rising of the court, and of the fact that a new trial had been refused and notice of appeal given. The law has in principle been the same as to the issuance of executions during term time from 1842 to the present time.

Article 1034, Revised Statutes, which is in substance nothing more than a re-enactment of the law as it existed before that date as to appeals since the first organization of this court, provides that when an appeal from a final judgment of the district court has been taken, and a bond filed, it shall be the duty of the appellant to file a transcript in the supreme court on or before the first day of the term of that court to which it is returnable, which term of the

supreme court is held *next succeeding* the term (of the district court) when the appeal was perfected, or on or before the first day in such term of the supreme court *next succeeding* the term of the district court from which the appeal is taken, designated for the trial of causes from the county where the final judgment was rendered.

The words used in this article, "next succeeding term" (of the district court) "when the appeal was perfected," evidently were not intended to convey the idea that the twenty days after the appeal bond was given were to be computed from that particular day in the term of the district court when the appeal was perfected, if it was (as it frequently was) perfected during the term; but the time was, it would seem, intended to be computed from the last day of the term of the district court during which term the appeal was perfected.

If this be not the obvious meaning of this article, as it is believed to be, such has been, or at least was, its universal interpretation by the bench and bar of this state in practice, until a very recent period. It is believed that one of the main reasons for the rule (57) governing the district court, which requires that the day when the term of the district court ended shall be stated on the heading of the transcript, was to enable this court to determine the extent of its control over the judgment of the court below.

We believe that the legislature has not, by any enactment up to this date, declared its purpose to change the law as it has heretofore existed and been expounded by the courts of this state, to the effect that the district court has, during its term, complete and perfect control over all its orders and judgments, and that the appellate power of this court cannot be exercised as to them until that court finally adjourns.

If there are any evils that are likely to arise at this day from the observance of this rule, they might be prevented by shortening the terms of the district court, or by the legislative department passing such other act in relation to this subject as could be lawfully done, without abridging or interfering with the judicial power vested by the constitution in the district court.

When the rule to show cause was issued in this case, the writer was not then aware of the decision of this court made in the case of Blum *v.* Wettermark, it having been very recently made, and being in fact at that time still pending before this court on an application for a rehearing. The rule *nisi* was then issued in accordance with the practice of this court (Meyer *v.* Carolan, 9 Tex., 250), and

by virtue of the authority vested in any member of this court by the constitution and laws.   Const., art. V, sec. 3; R. S., art. 1012.

The application is refused at the costs of the parties applying.

APPLICATION REFUSED.

[Opinion delivered February 2, 1883.]