### J. B. BLACKBURN ET AL. v. A. H. KNIGHT.

#### No. 6852.

1. **Urban Homestead — Abandonment.**—Where a well defined part of a town lot or lots once used for homestead purposes has been leased, and has been designated to such purpose, the homestead right as to such part no longer exists, and it is subject to execution. See facts.

2. **Control of Orders of Court During Term.** — Trial was had in the District Court and judgment rendered for defendant. The plaintiff appealed and gave appeal bond. During the term and after the appeal bond had been filed the district judge, of his own motion, set aside the judgment for the defendants and entered judgment for plaintiff for a part of the lot sued for. *Held*, such order was within the power of the court.

APPEAL from Cooke. Tried below before Hon. D. E. Barrett.
The opinion states the case.

*Stewart & Bailey, J. L. Harris*, and *E. A. Blanton*, for appellants.— When adjoining lots are claimed as a homestead, and one of said lots, in connection with the others, is used for the convenience or pleasure of the family, and the portion of the lot so used is not actually severed from the remainder, said lot is an entirety, and no court has a right to sever it and adjudge that only the portion absolutely necessary for the convenience or pleasure of the family shall be exempt. Newton v. Calhoun, 68 Texas, 453; Jacobs v. Hawkins, 63 Texas, 4; Wynne v. Hudson, 66 Texas, 9; Medlenka v. Downing, 59 Texas, 32.

*Davis & Garrett*, for appellee.—1. It was the duty and province of the court to determine from the evidence whether any part of the land in controversy was used by appellants as a part of their homestead, and if so what part was used; and the court having heard the evidence and found that no part of the land was so used except fourteen feet off of the north part of said lot in controversy, and that the balance had long before been abandoned as a part of appellants' homestead and was used by them for a totally different purpose, it was clearly the duty of the court under this finding of fact to render such judgment as was in fact rendered herein. Medlenka v. Downing, 59 Texas, 32.

2.   The District Court has full power and control over its judgments until the close of the term, and during term time may lawfully set aside, reform, amend, or correct any judgment which it may deem erroneous, and it is the court's duty so to do.   Hooker v. Williamson, 60 Texas, 525; Grubbs v. Blum, 62 Texas, 426; Garza v. Baker, 58 Texas, 483.

TARLTON, JUDGE, *Section B.*—This is a suit of trespass to try title, brought by A. H. Knight, appellee, to recover of appellants J. B. Blackburn et al. the land in controversy.   The appellee Knight claimed title to the land under a purchase by him at a sale by virtue of an execution issued out of the County Court of Cooke County, Texas, in March, 1888, in favor of said Knight and against said Blackburn et al.   There is no dispute about the regularity and validity of the judgment, execution, and sheriff's deed.   Cloud, one of the defendants, disclaimed, but defendant Blackburn and wife defended on the ground that the property in question was at the time of the levy of said execution and long prior thereto constituted part of their urban homestead in Gainesville, Texas, and was used and occupied by them as such.   The case was litigated upon the question of homestead alone, and on the 21st of December, 1888, the District Court of Cooke County, Texas, rendered judgment in favor of said Blackburn on said homestead plea.   Afterward, on the 31st of December, 1888, after plaintiff Knight had in all things perfected his appeal to this court, the district judge during term time, of his own motion, set aside his former judgment in favor of Blackburn and rendered judgment in favor of Knight for the land in controversy, less a strip of fourteen feet wide along the entire north boundary line of same.   From this judgment J. B. Blackburn and his wife Rebecca Blackburn have appealed to this court.   The following diagram is a correct representation of the premises of J. B. Blackburn, including the garden, rye patch, horse lot, and land in dispute, the premises in dispute fronting 72½ feet on Lanius street and running back east 74¾ feet to the rye patch:

*NORTH.*

The entire J. B. Blackburn place extends from Dixon to Lanius Street in Gainesville, Texas, and is 300 feet east and west by 150 feet north and south, being bounded on the east by Dixon Street and on the west by Lanius street, and on the north by a street. J. B. Blackburn's residence is situated on the northeast part of the lot and fronts Dixon Street. The land in dispute is out of the southwest part of the Blackburn block; on it is a house fronting on Lanius Street. Blackburn's horse lot is situated just north of the lot in dispute, and is separated from it by a fence; there is a fence back of the house which is on the premises in dispute, separating the latter from Blackburn's rye patch. In this rye patch Blackburn pastures his calves. On Lanius Street, at the southwest corner of the horse lot, is a double gate, and at the southeast corner of the horse lot is another double gate. These gates are on the premises in dispute. Blackburn uses these gates in getting wood upon his premises. He enters the double gate on Lanius Street and passes along the south string of the horse lot fence, through the other double gate into the rye patch, and throws his wood over the fence at the place marked "wood house." There is a single gate in the south string, and at the southeast corner of the horse lot fence. Blackburn uses this and the double gate in moving his calves from the horse lot to the rye patch. The house on the disputed lot is a plank house with three rooms, and is situated about fifteen or sixteen feet south of the horse lot fence, and in hauling wood the wagons pass between it and the horse lot fence. There is a cistern on the horse lot from which the present occupant of the house, a tenant of the Blackburns, uses water, going to and from the cistern through the single gate in the south line of the horse lot fence. There is also a single gate near the south line of the place in dispute, in the fence separating it from the rye patch. This gate is used by the tenant in going to and from a water closet just over the line in the rye patch. There are no large gates on the north side of Blackburn's premises, and it is necessary to use the two double gates before mentioned in order to get from Lanius Street into the rye patch, and to use the single gate in the south line of the horse lot and the double gate in the east end of the lot in question to get stock from the horse lot to the rye patch.

The court among other conclusions found that the lot in controversy was a part of the homestead of Blackburn and wife until about five years before the trial, when defendants built thereon a house with three rooms, which they intended to be permanently rented and which has been rented almost continuously since; that in the rental contracts with the various tenants who have occupied the premises defendants reserved the right to enter the same at pleasure with wagons through the double gate at the northwest corner of the same, and to pass along the north part of the same next to defendants' horse lot so as to pass through the other double gate at the northeast corner and into defendants' rye patch,

and that they have continuously exercised this right; that defendants have also always reserved and exercised the right of driving their calves back and forth from their horse lot to their rye patch through the gate between these premises and their horse lot; that except in this way, and to the extent of fourteen feet along the north side of this lot, defendants have never used any portion of the premises in controversy since they built and began to rent the house; that a strip of fourteen feet is amply sufficient for the purposes for which they have used it; that defendants, because of the permanent renting of the premises and of their limiting themselves to the use and to the right to the use of the strip of fourteen feet, had before the levy of plaintiff's execution abandoned their homestead rights in all of the lot in controversy except a strip of fourteen feet along the north side.

There are eight assignments of error, but they may be reduced to three, expressed as follows:

1. The court erred in finding that the premises in dispute, except as to the strip of fourteen feet, were abandoned as a homestead.

2. The court erred in reversing the judgment rendered for defendants on the 21st day of December, 1888, and rendering judgment of its own motion for plaintiff, because the proper practice is to grant a new trial.

3. The court erred in not granting a new trial because of the newly discovered evidence set out in the motion therefor, and because plaintiff's appeal at the time of reversing the judgment previously rendered had been perfected.

With reference to the first assignment, if there be evidence to support the several findings of fact above set out they will not be disturbed by this court. Montgomery v. Culton, 23 Texas, 156; Anderson v. Anderson, 23 Texas, 641; Flanagan v. Oberthier, 50 Texas, 382.

The defendant Blackburn testified that he had no intention of removing the house which is on the premises in controversy; that should Johnson, the present tenant, move out defendant would rent it to some one else. Defendant built it to stay there; he had never lived in it nor used is for anything except to rent. The evidence showed that since its construction the house has been almost continuously occupied by tenants, one of whom paid for its use $10 and another $12.50 per month; that during this period Blackburn and his wife mortgaged the property to one Cloud in order to secure his signature to a note, and thus borrowed money from Knight, the appellee; that Blackburn also sought to mortgage the property to one Rice, who was in possession at the time as his tenant and from whom he desired to borrow money. Two witnesses, one of whom rented from J. B. Blackburn and the other from Mrs. Blackburn, testified that when they leased the right was reserved by Blackburn and wife "to pass over the premises from the double gate on Lanius Street to the double gate in the rye patch fence with

wood and stock, and from the small gate in the south lot fence to the double gate in the rye patch with stock, and that *no other right in the premises was reserved.*" The undisputed evidence shows that the use of the premises since the construction of the house has been uniformly confined to a portion of the lot, the width of which is evidenced by the width of the double gate on Lanius Street and the double gate just opposite in the rye patch fence; this width it is plain does not exceed fourteen feet.

It thus appears that there was evidence to support the court's conclusions. Both the use and the right to use for homestead purposes were thus by the owners restricted to a definite and specified part of the lot. What became of the remainder? It was appropriated to a purpose distinct and different from the homestead. It was, as found by the court, permanently rented, serving as an independent source of income to the owners. We agree with appellants' counsel that our homestead laws, which have often been the subject of merited praise, should be liberally construed by the courts. Such a construction is in harmony with the letter and spirit of the law; but to extend, under the facts found by the court and justified by the evidence, the exemption to all the property here in dispute would be as we think an extravagant, not a liberal construction. If it appeared that a part of this lot was used for homestead purposes, and such part was left by the evidence uncertain and undefined, the doubt would have to be solved in favor of the homestead claim, and the exemption applied to the entire premises. We meet, however, with no such vagueness. The portion which was used for homestead purposes, and which is protected by the judgment, is fixed and defined by the evidence. Of the remainder, the extent of which is also fixed and defined by the evidence, it is beyond dispute that appellants had discontinued the use for any homestead purpose, and had intended such discontinuance. This constitutes abandonment. Archibald v. Jacobs, 69 Texas, 248. The property subjected no longer contributed to the comfort or convenience of the home. It was used "solely to be rented to others." "To continue the homestead protection to property so used would be a perversion of the spirit, letter, and purpose of the Constitution." Medlenka v. Downing, 59 Texas, 39; Wynne v. Hudson, 66 Texas, 1.

In their second assignment of error appellants complain of the action of the court in reversing its judgment previously rendered at the same term of the court. In their third assignment appellants complain that such action was peculiarly erroneous, because plaintiff's bond in appeal from the judgment which had been rendered against him had been filed.

We regard the proposition as established by our decisions that the District Court has such power and control over its judgments as that during the term at which any judgment may be rendered it may lawfully set

aside, reform, amend, or correct it, and this though an appeal or a writ of error bond has been filed by the party supposing himself aggrieved by the judgment.  Hooker v. Williamson, 60 Texas, 525; Grubbs v. Blum, 62 Texas, 426; Garza v. Baker, 58 Texas, 483.  If a court has the power to set aside and reform its judgment, we see no reason why it should not have the power to set it aside and render it for the opposing party during the term, as was done in this case.  Where it discovers that it has erroneously entered judgment for one party, when it should have rendered it for the other, we think that it has the power and it is its duty, before the judgment becomes final, to correct the error fully.  With the District Court during its term the aphorism seems to apply, as in the case of individuals, "It's never too late to mend."

The court correctly overruled the motion for a new trial referred to in appellants' third assignment.  The motion expressly shows that the evidence alleged to be newly discovered was known to appellants at and long before the trial.  If they failed to disclose to their attorney information which they possessed it can not be permitted to avail them after judgment.  Madden v. Shapard, 3 Texas, 49; Williams v. Arnis, 30 Texas, 50.

We recommend that the judgment be affirmed.

*Affirmed.*

Adopted June 9, 1891.