197 P.2d 875

### FAIRCHILD v. UNITED SERVICE CORPORATION et al.

No. 5099.

Supreme Court of New Mexico.

Sept. 24, 1948.

Irwin S. Moise and Lewis R. Sutin, both of Albuquerque, and H. A. Kiker, of Santa Fe, for appellant.

Adams & Chase, of Albuquerque, for appellees.

BRICE, Chief Justice.

Plaintiff (appellant), as administrator of the estate of Kendrick Ivan Fairchild, deceased, instituted this action to recover damages alleged to have been sustained because of the wrongful death of his decedent, caused by defendants' (appellees') negligence.

After answering defendants moved for a summary judgment, alleging that at the time deceased was struck and killed by defendant corporation's truck the defendant was hauling and disposing of garbage in the City of Albuquerque, and "said truck at the time of said accident was a public conveyance and was being operated in connection with said corporation's business as a common carrier," for which reason this action could not be maintained.

The plaintiff filed counter affidavits tending to prove that the defendant corporation was not a common carrier.

Thereafter, on the 2nd day of October, 1947, a summary judgment was entered, in which the defendant was authorized to amend its answer by inserting the words "for hire" in the second paragraph thereof, so that it thereafter alleged that the defendant "was engaged in its business of collecting, hauling, and disposing of garbage for hire for the general public within and in the vicinity of the City of Albuquerque." It was then adjudged that "plaintiff take nothing by reason of the matters and things alleged in the complaint, and that said complaint be and the same is, hereby dismissed."

On the 15th day of October, 1947 a motion for appeal was filed by plaintiff, and on the same day an order allowing an appeal to the Supreme Court of New Mexico was entered.

On the 20th day of October, 1947, plaintiff filed a request for permission to move to vacate the order of appeal without prejudice to its right to renew the motion. This motion was sustained and an order entered on the same day, which provided that the order "entered on October 15, 1947 (order granting appeal) be, and the same hereby is set aside and vacated without prejudice, however, to plaintiff's renewing its motion to appeal."

Thereafter, on the 20th day of October, 1947, the plaintiff moved the court to vacate its judgment for reasons stated; and on the 28th day of October, 1947, the plaintiff filed a supplementary motion for the same purpose, each of which was overruled, on October 20, 1947, and October 28, 1947, respectively. Thereafter on the 20th day of November, 1947, plaintiff moved for an appeal which was granted by order duly entered on that date.

The several motions and orders entered subsequently to the granting of the first appeal are as follows:

Motion:

"Comes now the plaintiff and respectfully shows the Court that there has heretofore been entered an order allowing an appeal in this Court from a summary judgment entered by the Court on October 2, 1947; that in order that the Court may consider whether or not the summary judgment order heretofore entered should be

vacated and to permit the plaintiff to file a motion requesting the vacating of said order, the plaintiff respectfully moves the Court that the order allowing an appeal in this cause be vacated and set aside by the Court, without prejudice to renewing the motion for an appeal."

"Order. This cause coming on for hearing on the motion of the plaintiff to vacate the order allowing an appeal to the Supreme Court, and the Court being duly advised in the premises;

Now, Therefore, It Is By The Court Ordered, Adjudged And Decreed: That the order allowing an appeal to the Supreme Court of the State of New Mexico, entered on October 15, 1947, be and the same hereby is set aside and vacated, without prejudice however to the plaintiff's renewing its motion to appeal."

"Motion. Comes now the plaintiff and moves the Court for an order vacating the summary judgment entered in this cause on October 2, 1947, and as grounds for said motion respectfully shows the Court:

"1. That Chapter 125 of the 1947 Session Laws of the State of New Mexico permits the bringing of this cause in the name of the personal representative of the deceased if any other person entitled to do so has not brought suit within nine (9) months after the death; that more than nine (9) months had passed without suit being brought at the time that the summary judgment was entered in this cause, and that the plaintiff was a proper party plaintiff to bring this suit; that there is attached hereto a certificate of the Clerk of the Court setting forth that no action had been commenced within nine (9) months after the death by any other person entitled to sue, which said certificate is marked 'Exhibit A', hereby referred to and made a part hereof."

"Supplementary Motion: Comes now the plaintiff and in supplement of his motion for an order vacating the summary judgment entered in this cause would respectfully show to the Court:

"1. That this cause of action was brought in the name of the personal representative of the deceased, whereas Section 21-104 of New Mexico Statutes 1941 Compilation provided that where the death was occasioned by reason of the negligence of a common carrier, the action should be brought by the wife. Under the law, the plaintiff has the right to file a petition substituting the wife as plaintiff, and the date of the substitution dates back to the time of the filing of the complaint.

"II. If the Court will vacate the summary judgment, the plaintiff will file its motion and petition for substitution of parties plaintiff, and this cause may then proceed to trial."

"Order. It Is Ordered that the motion filed herein on October 20, 1947, by plain-

tiff asking that summary judgment entered herein on October 2, 1947 be vacated, be and the same hereby is denied and overruled. To all of which the plaintiff excepts."

"Order: This Cause came on for hearing upon plaintiff's supplementary motion for an order vacating the summary judgment entered herein, and the Court having heard argument of counsel and considered trial briefs submitted by counsel raising among other things, the question of the Court's jurisdiction to hear and determine said motion, and the Court being of the opinion that, in view of this order denying said motion, it is unnecessary to decide the question of jurisdiction, and now being fully advised in the premises, It Is Ordered that said supplementary motion be, and the same is, hereby denied, to all of which the plaintiff is duly allowed an exception."

Thereafter the appellant moved for an appeal to the Supreme Court, and the following order allowing appeal was entered:

"Order Allowing Appeal. This cause coming on for hearing on motion of the plaintiff for an appeal from the summary judgment entered in this cause against him, and also from that certain order overruling supplemental motion to vacate summary judgment, and it appearing to the Court that said plaintiff has been aggrieved by said judgment.

"Now, Therefore, It Is By The Court Ordered that the plaintiff be and he hereby is allowed an appeal to the Supreme Court of the State of New Mexico from that said judgment entered in this cause on October 2, 1947, and also from that certain order overruling motion to vacate summary judgment entered on the 20th day of November 1947, and from that certain order overruling supplemental motion to vacate summary judgment entered on the 28th day of November 1947."

In moving to set aside the first order of appeal appellant's purpose was to remove this obstacle so that he might take advantage of the thirty day statute, hereinafter set out, for moving against the judgment.

A question of jurisdiction raised by the appellees will be first disposed of. It is asserted that after the order granting the first appeal was entered the district court was without jurisdiction to vacate or cancel it for the reason, as it is asserted, that the case was then pending in this court.

It is a general rule of law, applying where courts have terms, that the judgments, decrees, or other orders of courts, however conclusive in their character, are under the control of the court which pronounces them during the term at which they are rendered or entered of record, and may, during that term, be set aside, vacated, modified or annulled by that court. Bronson, Executrix, v. Schulten, 104 U.S.

410, 26 L.Ed. 797; Zimmern v. United States, 298 U.S. 167, 56 S.Ct. 706, 80 L.Ed. 1118; Goddard v. Ordway, 101 U.S. 745, 25 L.Ed. 1040; 49 C.J.S., Judgments, § 229, page 436.

But in this state the district court has no terms, except for the trial of jury cases, Coulter v. Board of Com'rs, 22 N.M. 24, 158 P. 1086.

It was held in Crichton v. Storz, 20 N.M. 195, 147 P. 916; Fullen v. Fullen, 22 N.M. 122, 159 P. 952, and Coulter v. Board of Com'rs, supra, that because there were no terms of court for the trial of civil cases to the court, a final judgment rendered passed immediately from the further control of the court, except in two instances provided by statute, to wit, that of a default judgment and that of a judgment irregularly entered.

Subsequent to the decisions in the Crichton, Coulter and Fullen cases, Sec. 19-901, Sts.1941, Ch. 15, N.M.L.1917, was enacted, a part of which is as follows: "* * * Final judgments and decrees, entered by district courts in all cases tried pursuant to the provisions of this section shall remain under the control of such courts for a period of thirty (30) days after the entry thereof, and for such further time as may be necessary to enable the court to pass upon and dispose of any motion which may have been filed within such

period, directed against such judgment * * *."

It was stated by this court in Kerr v. Southwest Fluorite Co., 35 N.M. 232, 294 P. 324, 325, that this statute "Restored to district courts, during the period of thirty days, the control which they formerly had over their judgments during term time; which control had been held destroyed as the effect of abolishing terms of court except for jury cases."

And we said in Gilbert v. New Mexico Const. Co., 35 N.M. 262, 295 P. 291, 292: "What we have here to determine is the legislative intent. We recently suggested in Kerr v. Southwest Fluorite Company [35 N.M. 232], 294 P. 324, that the purpose was to restore to the district courts that control over their judgments during term time which they had been held to have lost when the same section in its original form did away with terms, except for jury cases. Pursuing that suggestion to determine the extent of the control restored, we find that in Fullen v. Fullen, 21 N.M. 212, 153 P. 294, 300, it was said to be 'plenary' and to include vacating, setting aside, modifying and annulling judgments, 'upon the theory that until the term closed the whole matter of the determination of the rights of litigants rested in the breast of the court and, theoretically at least, all judgments became final as of the last day of the term.' See

also, Henderson v. Dreyfus, 26 N.M. 262, 191 P. 455; Id., 26 N.M. 541, 191 P. 442."

██ It is held by the great weight of authority that an order granting an appeal may be vacated by a subsequent order of the same court, if made within the time that judgments, orders and decrees are under the control of the court that entered them. Goddard v. Ordway, 101 U.S. 745, 25 L.Ed. 1040; Brewster v. Springer, 79 Or. 88, 154 P. 418; Miller v. Prout, 32 Ida. 728, 187 P. 948; Doullut v. Rush, 142 La. 460, 77 So. 116; Hydraulic Press Brick Co. v. Bambrick Bros. Const. Co., Mo.App., 211 S.W. 93; Bronson v. Schulten, 104 U.S. 410, 26 L.Ed. 797; McCanless v. State, ex rel. Hamm, 181 Tenn. 308, 181 S.W.2d 154, 153 A.L.R. 832; Shaw v. Addison, 236 Iowa 720, 18 N.W.2d 796; Cook v. Smith, 58 Iowa 607, 12 N.W. 617; Lee v. Fowler, 263 Mass. 440, 161 N.E. 910; Blackburn v. Knight, 81 Tex. 326, 16 S.W. 1075; Thompson v. Towle, 98 Conn. 738, 120 A. 503; Niedringhaus v. Niedringhaus Inv. Co., Mo.App., 54 S.W.2d 79. The Missouri court in the Niedringhaus case cites many authorities to the effect that the district court may set aside its judgment or order of appeal after the appeal is taken.

In Goddard v. Ordway, the Supreme Court said: "The allowance of the appeal to Ordway was a judicial act of the court in term time. The order was entered on the minutes as part of what was done in the cause by the court while in session. In Ex Parte Lange, 18 Wall. 163, 21 L.Ed. 872, we said that 'The general power of the court over its own judgments, orders and decrees, in both civil and criminal cases, during the existence of the term at which they are first made is undeniable * * *.' As part of the 'roll of that term,' they are deemed to be 'in the breast of the court during the whole term.' * * * Under this rule, we think it clear that the court had the power during the term, at the request of Ordway, to set aside the order of allowance and thus vacate the appeal which had been granted in his favor. This was done before any adverse rights had intervened. We are unable to see how the allowance of an appeal differs in this respect from any other judicial order made in the cause. If the one is subject to revocation or amendment while the term continues, so, as it seems to us, must be the other.

"There is nothing in this which interferes with the rule that, where an appeal is allowed, all jurisdiction of the suit appealed is transferred to this court. Here the question is, whether an appeal was, in legal effect allowed. It is true an order of allowance was granted and entered on the minutes of the court. So long as this order continued in operation it bound the parties; but as it remained subject to the judicial power of the court during the term at which it was entered, its revocation va-

cated what had been done, and left the decree standing with no appeal allowed * * *. Neither one of the parties was finally discharged from the court until the term ended, and each was bound to take notice of whatever was done affecting his interests in the suit until a final adjournment actually took place."

To the same effect are the following cases:

" * * * An appeal from a judgment does not divest the jurisdiction of the trial court to pass upon or to grant a motion for a new trial, which operates to vacate the judgment. * * *

"The proceeding under this staute is an independent proceeding and exists concurrently with the right of appeal from the judgment. Any order made pursuant to such a proceeding does not operate to extend the time for appeal from the judgment. The proper course is to appeal from the judgment if it is desired to have the judgment reviewed and to apply to the trial court for relief under this section, notwithstanding such appeal." Miller v. Prout, 32 Idaho 728, 187 P. 948, 949.

"It is well settled that the circuit court has jurisdiction of a cause, and power to control and set aside its judgments and orders, during the term at which the judgment was rendered or the orders made, and the effect of the action of the trial court, in setting aside the judgment at the same term at which it was rendered, had the effect of vacating the appeal from that judgment, and when it entered up a new judgment at the same term during which the first was entered, as appears by the certificate of the clerk, and as learned counsel for appellant practically admits was done, the appeal from this first judgment fell, and could be taken only from the final judgment, and it is from a final judgment alone that an appeal lies, save in some exceptional cases, as on interlocutory judgments and the like, to which classes this did not belong." Hydraulic Press Brick Co. v. Bambrick Bros. Const. Co., Mo.App., 211 S.W. 93, 94.

" * * * a trial court may, within the time limited therefor, set aside a judgment and amend the final determination by making and filing findings of fact and of law and render judgment thereon, and that it is not only within the power of that court to make the correction, notwithstanding an appeal may have been taken and not heard, but that the duty devolves upon it to do so, in order to save the expense of an appeal, which without such amendment must necessarily result in a reversal of the judgment." Brewster v. Springer, 79 Or. 88, 154 P. 418, 419.

" * * * We regard the proposition as established by our decisions that the district court has such power and control over

its judgments as that during the term at which any judgment may be rendered it may lawfully set aside, reform, amend, or correct it, and this, though an appeal or a writ of error bond has been filed by the party supposing himself aggrieved by the judgment. * * * If a court has the power to set aside and reform its judgment, we see no reason why it should not have the power to set it aside and render it for the opposing party, during the term, as was done in this case." Blackburn v. Knight, 81 Tex. 326, 16 S.W. 1075, 1078.

But it is argued that the question was decided in Abeytia v. Spiegelberg, 20 N.M. 614, 151 P. 696, 697. In that case appellee moved in the district court for a dismissal of the appeal seventy days after it was granted. We said:

" * * * If it be conceded that the district court, by the allowance of the appeal, lost jurisdiction of the cause, except for certain specified purposes, such, for instance, as the settling and signing of the bill of exceptions, statutory provisions governing which exist, it must necessarily follow that the trial court could not entertain a motion to dismiss the appeal, and that the clerk of that court, by accepting and filing an unauthorized motion, could not make such motion a part of the record on appeal, for such motion would not be a paper 'regularly filed in a cause with the clerk of the district court,' under section 4491, Code 1915.

"Section 4471, Code 1915, provides for the allowance of appeals by the district courts. No condition precedent is attached, except an application to the court and the suing out and serving of a citation, where the appeal is not taken in open court. Upon the allowance of the appeal, the case is in contemplation of law pending in this court. In the case of Canavan v. Canavan, supra [18 N.M. 468, 138 P. 200], we said: 'Under our statute, however, the filing of the bond within the specified time is not necessary to our jurisdiction. It attaches upon the allowance of the appeal or the issuance of the writ of error.'

"This statement of the law is amply supported by the adjudicated cases. While under many of the cases the giving of an appeal bond is jurisdictional, and must precede the allowance of an appeal, the courts hold that where the requisite steps are taken, and the appeal is allowed the jurisdiction is transferred, or, as in some cases the filing of the bond follows the allowance of the appeal; but such bond is essential to the jurisdiction of the appellate court."

We stated in Veale v. Eavenson, 52 N.M. 102, 192 P.2d 312, 314: "Upon the entry of the order allowing an appeal and the giving of the supersedeas bond the trial court lost jurisdiction of the case except for the

purpose of perfecting the appeal to this court. In contemplation of law it was pending here."

The question here posed was not presented or discussed in the Abeytia case, nor could it have been. At the time of that decision Sec. 19-901, N.M.Sts.1941 had not been enacted. In Veale v. Eavenson, supra, the question was whether the court erred in refusing to consider requested findings of fact and conclusions of law filed eighty-six days after an appeal had been allowed and supersedeas bond filed. Obviously the trial court ruled correctly. The case was pending in this court by virtue of the order of appeal. The trial court had lost jurisdiction except for the purpose of appeal to this court; and the jurisdiction over it, with the exception stated, remained in this court from the entry of the order allowing appeal and filing supersedeas as this court stated.

The statute, 19-901, remained in force as a rule of court by virtue of the following statutes:

"The Supreme Court of the State of New Mexico shall, by rules promulgated by it from time to time, regulate pleading, practice and procedure in judicial proceedings in all courts of New Mexico, for the purpose of simplifying the same and of promoting the speedy determination of litigation upon its merits. * * *" Sec. 19-301, N.M.Sts.1941.

"All statutes relating to pleading, practice and procedure, now existing, shall, from and after the passage of this act (§§ 19-301, 19-302) have force and effect only as rules of court and shall remain in effect unless and until modified or suspended by rules promulgated pursuant hereto." Sec. 19-302, N.M.Sts.1941.

The following two rules are to be construed with rule 19-901, to wit:

"Within three months from the entry of any final judgment in any civil action, any party aggrieved may appeal therefrom to the Supreme Court. * * *" Supreme Court Rule V, 1941 Comp. § 19-201.

"An appellant or plaintiff in error, not having superseded the judgment, such appeal not having been docketed in the Supreme Court, may abandon his appeal or writ of error by filing notice thereof in the court allowing such appeal or issuing such writ of error, and an order shall be thereupon entered vacating the allowance of such appeal or writ of error. The clerk of the Supreme Court shall forthwith transmit to the clerk of the district court a certified copy of any order vacating the allowance of a writ of error.

"2. After abandonment of appeal, no writ of error, and after abandonment of writ of error, no appeal, shall be allowed to the same party unless such appeal or writ of error shall be applied for within ten days after the entry of the vacating order."

Supreme Court Rule XI, 1941, Comp. § 19-201.

By promulgating Supreme Court Rule XI (which it seems is a rule of practice and procedure for district court in cases of appeal), district courts are authorized to vacate orders granting appeal, this court's jurisdiction notwithstanding.

■ We have the exact situation here. The district court, with no exception, is given control by rule of court over its orders, judgments, and decrees for thirty days after entry. It was never contemplated that this authority should be nullified by an appeal to this court. Frequently both parties are dissatisfied with a judgment. One may desire to appeal, the other move against the judgment. Could the latter be deprived of his statutory right to move against the judgment by the former's hasty appeal? No such injustice was contemplated. The rule authorizing appeals must be construed with rule 19-901, supra, under which district courts may vacate any order, judgment or decree, including an order allowing an appeal, if it interferes with the district court's authority granted by rule 19-901, supra.

■ We stated in Pankey v. Hot Springs Nat. Bank, 42 N.M. 674, 84 P.2d 649, 653: "There has been a constant endeavor of this court with the assistance of advisory committees selected by the court from the Bar of the state, to liberalize our rules of appellate procedure to the end that causes brought here for review may be heard upon their merits if possible."

Our rules will be liberally construed to effectuate that end.

■ We are of the opinion that the trial court had jurisdiction to vacate the first order granting an appeal to this court for the purposes stated, if not generally; a question not decided.

This action was brought under the following statutes:

"Whenever the death of a person shall be caused by the wrongful act, neglect or default of another, although such death shall have been caused under such circumstances as amount in law to a felony, and the act, or neglect, or default, is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured." § 24-101, N.M.Sts.1941.

"Every action instituted by virtue of the provisions of this and the preceding section must be brought within one (1) year after the cause of action shall have accrued." § 24-102, N.M.Sts.1941.

"Every such action as mentioned in section 1821 (§ 24-101) shall be brought by

and in the name or names of the personal representative or representatives of such deceased person, and the jury in every such action may give such damages, compensatory and exemplary, as they shall deem fair and just, taking into consideration the pecuniary injury or injuries resulting from such death to the surviving party or parties entitled to the judgment, or any interest therein, recovered in such action, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default. The proceeds of any judgment obtained in any such action shall not be liable for any debt of the deceased: Provided, he or she shall have left a husband, wife, child, father, mother, brother, sister, or child or children of the deceased child, but shall be distributed as follows:

"First. If there be a surviving husband or wife, and no child, then to such husband or wife; if there be a surviving husband or wife and a child or children or grandchildren, then equally to each, the grandchild or grandchildren taking by right of representation; * * *." § 24-103, N. M.Sts.1941.

The appellee asserts that it is a common carrier and that if it is liable in damages for the death of deceased, the suit should have been brought under Sec. 24-104, N.M. Sts.1941, which is as follows: "Whenever any person shall die from any injury resulting from, or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car, or train of cars, or of any driver of any stage coach or other public conveyance, while in charge of the same as driver; and when any passenger shall die from injury resulting from, or occasioned by any defect or insufficiency in any railroad, or any part thereof, or in any locomotive or car, or in any stage coach, or other public conveyance, the corporation, individual or individuals, in whose employ any such officer, agent, servant, employee, engineer or driver, shall be at the time such injury was committed, or who owns any such railroad, locomotive, car, stage coach, or other public conveyance, at the time any injury is received, resulting from, or occasioned by any defect or insufficiency above declared, shall forfeit and pay for every person or passenger so dying, the sum of seven thousand five hundred dollars ($7,500) which may be sued and recovered; first, by the husband or wife of the deceased; or second, if there be no husband or wife, or if he or she fails to sue within six (6) months after such death, then by the minor child or children of the deceased; * * *."

As the deceased had a wife the remainder of the statute is immaterial to a decision.

In Sanchez v. Contract Trucking Co., 45 N.M. 506, 117 P.2d 815, we had under consideration the construction of this section, 24-104, and held that the words "public conveyance" were therein used in the sense of "common carrier." We quoted with approval from Drakesmith v. Ryan, Mo.App., 57 S.W.2d 727, 729, as follows: " * * * Rather, we think it was the purpose of the Legislature to use the term 'public conveyance' in the sense of 'common carrier,' and to make the statute cover carriers by rail, water, and land. In this instance the trucks of defendant were properly classed as automobiles or motorcars; and, inasmuch as they were also public conveyances, in that they were used in defendant's regular business to transport freight for hire, the application of the statute seems established."

It is manifest that if the appellee is not a common carrier in the sense this phrase is used in the Sanchez case then the suit was correctly brought by the deceased's administrator. White v. Montoya, 46 N.M. 241, 126 P.2d 471.

A common carrier under the New Mexico statute as it existed in 1941, at the time we handed down our opinion in Sanchez v. Contract Trucking Company, supra, was defined as follows: "The term 'common motor carrier' when used in this act, shall mean any person who or which undertakes, whether directly or by lease or any other arrangement, to transport passengers or property, or any class or classes of property, for the general public, by motor vehicle for hire over regular routes. * * *" Sec. 68-1302, N.M.Sts.1941.

The following definitions have been often used: "A common carrier is one who, by virtue of his calling, undertakes, for compensation, to transport personal property from one place to another for all such as may choose to employ him; and everyone who undertakes to carry for compensation the goods of all persons indifferently, is, as to liability, to be deemed a common carrier." Jackson Architectural Iron Works v. Hurlbut, 158 N.Y. 34, 52 N.E. 665.

But it is said to be too broad; that a better definition is,

"One who offers to carry goods for any person between certain termini or on a certain route, and who is bound to carry for all who tender him goods and the price of carriage." The Neaffie, 17 Fed.Cas. page 1260, No. 10,063, 1 Abb.U.S. 465.

An early definition of a common carrier, is one who undertakes as a public employment the transportation of goods for persons generally from place to place, to be delivered to the place appointed, for hire or reward, and with or without a special agreement as to price. McHenry v. Philadelphia W. & B. R. Co., (Del.) 4 Har. 448;

Ace–High Dresses v. J. C. Trucking Co., 122 Conn. 578, 191 A. 536, 112 A.L.R. 86.

In State v. Diamond Tank Transport Co., 2 Wash.2d 13, 97 P.2d 145, a Washington statute similar to ours was construed and the Washington court held that one engaged in collecting garbage in the city was a contract carrier and under the definition of "garbage" some of the things mentioned as garbage have a property value. It was held, however, that a garbage collector was a contract carrier and therefore could not be a common carrier, Also, in City Sanitary Service Co. v. Rausch, 10 Wash.2d 446, 117 P.2d 225, it was held that a company which entered into a contract with the city in which the company was granted exclusive right to collect garbage within the city for a certain period, pursuant to an ordinance, was a contract carrier.

In Masgai v. Public Service Comm., 124 Pa.Super. 370, 188 A. 599, 600, it was held that under a Pennsylvania law defining a common carrier as including "any and all common carriers * * * engaged for profit in the conveyance of * * * property * * * between points within this Commonwealth," that "common carrier" included one who hauls garbage for the public by dump trucks. The court stated: "The character of appellant's service is not affected by the fact that but a fraction of the public have need for a dump truck. Within the field of those who need this service, it is of a public character. Nor can we accept the argument of appellant that because his dump trucks are frequently used in the haulage of garbage, ashes, cinders, and other refuse to the dump or incinerator, that such materials are not property as contemplated by the common carrier section of the Public Service Company Law. Although the owner of such materials may regard them as of no value, still the right to their possession and the need for their disposal are within the control of the individual owner. All of these materials have certain valuable uses under varied circumstances, and even though the owner desires to dispose of or destroy such materials, the right of property continues until disposed of or destroyed. In performing such disposal service, appellant was clearly engaged in the business of a common carrier."

Notwithstanding "garbage," that is removed by a garbage collector for hire, may at times have something of value in it; it is refuse, and worthless to the owner. He pays to have it removed from his premises as worthless to him, not as property or goods to be delivered to an owner or consignee. Garbage collected to be removed and thrown away insofar as the owner is concerned, is not goods or personal property in the sense used in the definition of "common carrier." It must be carried for a consignor to a consignee as goods or something of value.

Whether in the Sanchez case we had reference to our statutory, or the common law definition of "common carrier," it is immaterial. The appellee was not a common carrier in either sense. He was merely a contract carrier as held by the Washington court.

The judgment of the district court is reversed and cause remanded to the district court with instructions to proceed with its trial not inconsistent herewith.

It is so ordered.

LUJAN, SADLER, McGHEE and COMPTON, JJ., concur.