THE STATE OF TEXAS, EX REL GEORGE DISHMAN ET AL, Relators

V.

HONORABLE GORDON D. GARY, DISTRICT JUDGE, ET AL, Respondents

No. A-9088.   Decided July 2, 1962
359 S.W. 2d 456

ASSOCIATE JUSTICE SMITH dissents.

*Will Wilson*, Attorney General, Austin, *W. C. Lindsey*, Criminal District Attorney, Jefferson County, *W. G. Walley, Jr.*, Beaumont, for relators.

*Keith, Mehaffey, McNicholas & Weber, Quintin Keith* of the firm. *Gilbert· T. Adams*, Beaumont, for respondents.

ORIGINAL MANDAMUS

ASSOCIATE JUSTICE JAMES R. NORVELL delivered the opinion of the Court.

This cause grows out of a judicial stalemate existing in Jefferson County, Texas, which was brought about by conflicting orders issued by the judges presiding over the courts of the 60th and the 136th judicial districts. A legal question as to the jurisdiction of courts is involved and there is nothing in the record before us which reflects upon the integrity or good faith of the judges or the district attorneys involved.

The specific relief requested by the State of Texas is a writ of mandamus requiring the Honorable Gordon D. Gary, judge of the 60th District Court, to expunge from the record a certain order, said to be void, entered by him on June 6, 1962, which purports to reinstate an ouster suit originally brought by the State against Charles H. Meyer, the Sheriff of Jefferson County, Texas. Articles 5970 et seq., Vernon's Ann. Texas Stats. The State also sought vacation of the ancillary injunctive orders contained in said decree of June 6. Our original jurisdiction is invoked under the provisions of Article 1733, Vernon's Ann. Civ. Stats. See, State v. Ferguson, 133 Texas 60, 125 S.W. 2d 272.

Briefly stated, the circumstances giving rise to this case are these:

On March 27, 1961, an ouster suit on behalf of the State was filed against Meyer in the 60th District Court and docketed as Cause No. B-77,303. Various proceedings were had in this cause; a cross-action was filed by Meyer, the petition was amended and attempts made to take depositions. These need not be examined in detail because on May 21, 1962, the State moved to discontinue the cause "without prejudice to the right of the defendant to be heard on his counterclaim". This motion was contested by the defendant but the Court sustained the motion and ordered a dismissal of the ouster suit.

On May 31, 1962, at a time when no ouster suit was pending in the 60th District Court, the State of Texas, through W. G. Walley, Jr., the acting Criminal District Attorney of Jefferson County, filed an ouster suit in the 136th District Court of Jefferson County against Meyer.[1] This suit was docketed as Cause No. D-79,254. After citation was ordered issued on the petition, Article 5979, a motion requesting that Sheriff Meyer be suspended from office was also filed. Article 5982.

On May 31, 1962, the Honorable Connally McKay,[2] who was presiding as judge of the 136th District Court, entered an order temporarily suspending Meyer from the office of Sheriff of Jefferson County and appointing Richard E. Culbertson to discharge the duties of such office "for the time being and during the pendency of the suit". This order recited that the requirements of Article 5979 as to citation, etc. had been complied with. Culbertson duly qualified as acting sheriff by complying with the provisions of Article 5982.

Also on May 31, 1962, and about thirty minutes after the rendition of Judge McKay's order suspending Sheriff Meyer from office, the Honorable Gordon D. Gary issued a temporary restraining order enjoining and restraining Richard E. Culbertson from acting or purporting to act as Sheriff of Jefferson County or from interfering in any way with Charles H. Meyer in the conduct of the office of Sheriff of Jefferson County. This restraining order remained in force until June 1 at 10 A.M., when

---

1. Subsequent to the filing of this suit, W. C. Lindsey was appointed Criminal District Attorney of Jefferson County and has joined in these proceedings. Article 52-160b, Vernon's Ann. C.C.P.

2. Regular Judge of the 114th Judicial District, sitting for the Honorable Harold R. Clayton, Judge of the 136th Judicial District who had recused himself.

it was continued until June 6, 1962, at which time Judge Gary extended the terms of the temporary restraining order against Culbertson "until further order of this Court". The result of this order was to bring about a judicial impasse. Sheriff Meyer cannot act as sheriff without violating the order of the 136th District Court suspending him from office. Mr. Culbertson cannot act as sheriff without violating an injunction of the 60th Judicial District. In effect Jefferson County, with a population of 245,659, is left without a chief law enforcement officer.

The order of June 6, 1962, as well as the restraining orders heretofore mentioned, were all entered in Cause No. B-77,303 on the docket of the 60th District Court. The Court, by its order of June 6, sought to reinstate this dismissed ouster suit over the protest of the Criminal District Attorney by directing that the State's amended petition and suit in said Cause No. B-77,303 "be and the same is hereby reinstated on Defendant's Amended Motion therefor".

This provision purporting to reinstate the cause and reassert jurisdiction over the subject matter of the suit is the basic cause here involved. The injunctive orders relating to Mr. Culbertson, as well as those provisions of the June 6 decree, restraining the parties representing the State, i.e., the relators and the Criminal District Attorney from taking any further action in the cause pending in the 136th District Court, No. D-79-254, or any other court excepting an appellate court" are ancillary to and dependent upon the order reinstating said Cause No. B-77,303. If reinstatement falls, the ancillary orders fall with it.

As we view the case the controlling question presented is whether or not a District Court having relinquished jurisdiction over a statutory ouster cause may thereafter reassert jurisdiction over such dismissed cause, so as to defeat the jurisdiction of another co-ordinate court which acquired jurisdiction of the ouster suit at a time when there was no ouster suit pending on the docket of the first court mentioned.

■ Article 5, Sec. 24 of the Texas Constitution and Title 100 of the Revised Civil Statutes, (Articles 5691 to 5997, inclusive, Vernon's Ann. Texas Stats.) relate to the removal of certain public officers. Articles 5970 to 5987, inclusive, provide that a district judge may remove a sheriff as well as other designated officers from office and prescribe the procedures that govern such suits. The remedy of ouster is one which "belongs to the State, in its sovereign capacity, to protect the interests of the people as a

whole and guard the public welfare by ousting incumbents of office who wrongfully hold to the injury of the public". State Railroad Commission v. People, 44 Colo. 345, 98 P. 7, 22 L.R.A., N.S. 810. In such proceeding the district attorney is a proper representative of the State and by virtue of his office has control of the prosecution of the cause. Article 5, Sec. 21, Constitution of Texas; Staples v. State, ex rel. King, 112 Texas 61, 245 S.W. 639; Reeves v. State ex rel. Mason, 114 Texas 296, 267 S.W. 666; State ex rel. Hancock v. Ennis, Texas Civ. App., 195 S.W. 2d 151, ref. n.r.e. Except where otherwise provided by statute, the rules of practice governing other civil cases control. Article 5981.

Under the procedures set forth and clearly inferable from the pertinent constitutional and statutory provisions, as well as under the express wording of the Texas Rules of Civil Procedure, it appears that the district attorney, as leading counsel for the State, was empowered to discontinue Cause No. B-77,303 on the docket of the 60th District Court. State ex rel. Hancock v. Ennis, Texas Civ. App., 195 S.W. 2d 151, ref. n.r.e.; Ex parte Norton, 118 Texas 581, 17 S.W. 2d 1041.

In Norton's case above mentioned, the plaintiff, J. F. Norton, took a nonsuit under Article 2182 from which Rule 164 is taken with no change in verbiage. The court refused to allow the nonsuit until the plaintiff should pay up some back alimony. The case came to this Court upon habeas corpus with Norton contending that the order of contempt entered as a result of his refusal to pay such back alimony was void. This Court agreed with this contention and held that the right to take a nonsuit is absolute and unqualified when a motion therefor is made before the jury has retired, in a jury case, or before the judge has announced his decision in a non-jury case. This Court further said:

"Had the court granted relator his legal rights and dismissed the divorce suit when he in open court took a nonsuit, he would have lost jurisdiction of the divorce proceedings as such, and would have had no power or jurisdiction to enter a contempt order for failure of relator to pay alimony, and, had the relator been accorded the right which was absolutely given him under the statute, there would have been absolutely no way to enforce the payment of the back alimony claimed by the wife. Wright v. Wright, 6 Texas 29. Inasmuch as the relator had the right to dismiss his divorce action, and thus end the divorce proceedings, we are of the opinion that the trial court could not prejudice his rights by refusing to allow the nonsuit and dismiss the suit for divorce."

The order of contempt which was rendered subsequent to the motion for nonsuit was held void and Norton was discharged.

Norton's case would seem conclusive of the question before us unless a valid distinction can be made between that case and this one based upon the circumstance that in Cause No. B-77,303 (60th District Court), Meyer had filed a cross action and the order permitting the State to nonsuit was entered "without prejudice to the right of the defendant to be heard upon his counterclaim".

Seemingly the prosecution of a cross action in a statutory ouster suit is a procedure without precedent. Counsel has cited, and we have found, no reported case in which a cross action was considered in connection with an ouster suit brought under the Texas Constitution and statutes. When we consider the nature of the remedy which, as above pointed out, is a remedy prosecuted by the State in its sovereign capacity, it is difficult to imagine a set of circumstances under which a cross action would properly lie[3] except perhaps where it was shown that the district attorney had clearly abused the discretion vested in him by law and repeatedly filed and dismissed ouster suits against a defendant for the purpose of harassment so as to make applicable the rule announced by this Court in University of Texas v. Morris, 162 Texas 60, 344 S.W. 2d 426. It is one thing to attack the discretion of the district attorney in taking one nonsuit, and another thing when it appears that repeated nonsuits have been taken as to suits based substantially upon the same state of facts. It further seems that the remedy in case of the filing of repeated vexatious lawsuits does not lie in preventing the taking of a nonsuit or the reinstating of dismissed causes but rather in the preventing of the filing of another suit. The ouster statutes provide a safeguard against the repeated filing of vexatious suits in that Article 5979 provides that after an ouster petition is filed, an application for citation shall be made to the district judge who shall either order the issuance of citation or refuse to do so. In the event the latter action is taken, the statute directs that the "petition shall be dismissed." Whether an exclusive remedy lies with an attack upon the discretion of the district judge in permitting citation to issue upon a vexatious suit, i.e., one that has been

---

3. While the factual situation in Anderson, Clayton & Co. v. State, 122 Texas 530, 62 S.W. 2d 107 is wholly different from that now before us, it should be pointed out that an exception to the rule that the State, having invoked the jurisdiction of a court to determine a civil cause, may be held to answer on a cross action is recognized where "exemptions inherent in sovereignty" are involved. See, State v. Humble Oil & Refining Co., 141 Texas 40, 169 S.W. 2d 707.

repeatedly filed, or an injunction could issue in another suit is a question which is not presented by the record before us.

■ The nature of the ouster suit is such that ordinarily it admits of no cross action. There is no statutory provision for a cross action. The proceeding is quasi criminal in nature, State v. Reyna, 160 Texas 404, 333 S.W. 2d 832, and it would seem that the only issue presented would be whether or not the defendant were guilty of the charges brought against him. This issue is to be determined by a jury under a general charge. The cross action here involved consists in little more than the affirmative assertion of a defense under Article 5986 which provides that "No officer in this State shall be removed from office for any act he may have committed prior to his election to office." Reeves v. State, 114 Texas 296, 267 S.W. 666; In re Laughlin, 153 Texas 183, 265 S.W. 2d 805, 348 U.S. 859, 75 S. Ct. 84, 99 L. ed. 677. In our opinion the assertion of this cross action, or any amendment thereto,[4] could not operate to deprive the district attorney of his control of the statutory ouster suit nor serve as a basis for the reinstatement of a suit in which he had taken a voluntary nonsuit.

The respondent Meyer has cited a number of cases relating to the right of a public officer to sue in equity and enjoin intermeddlers from interfering with his conduct of his office. In none of these cases was it sought to enjoin a district attorney from bringing an ouster suit and if Meyer's cross action be considered as an independent suit for that purpose, the authorities cited by him do not support his position.

In Caruthers v. Harnett, 67 Texas 127, 2 S.W. 523, the appellant, county treasurer of Presidio County, brought an action alleging *inter alia* that defendants, members of the county commissioners' court, had issued bonds to pay for the erection of a courthouse and jail at the new county seat, and that some of these bonds had been presented to him for registration. He had refused to register the bonds for stated reasons and alleged that he feared that the commissioners' court would seek to remove him from office because of his refusal to register the bonds. The prayer was for an injunction to restrain the commissioners from interfering with the appellant's office or official records. The trial court denied the injunction, finding that appellees had

---

4. It is undisputed that the two ouster suits mentioned are the only ones that have been filed by the district attorney against Meyer. It therefore appears that no allegation of repeated filings and dismissal can be made.

no intention of interfering with appellant's office or the public records in his charge. This was affirmed on appeal.

Although respondent cites this case for the general proposition that a public official may seek an injunction against anyone attempting to remove him, the following language in the opinion clearly distinguishes the case from the present situation:

> "There can be no doubt that a district court has power to issue an injunction to restrain the *illegal seizure* or use of the books and papers pertaining to any public office; and it would seem not only the right, but also the duty, of any public officer intrusted with the records, books, and papers of his office affecting his own right, as well as the public welfare, to protect them from an illegal seizure or use; and to do this, if necessary, he may ask the interposition of a court of equity. The relief sought by the appellant brings him within this rule, *in so far* as he asks that the defendants be enjoined from seizing and carrying away the records, books, and papers pertaining to his office of county treasurer." (Italics supplied.)

The three Callaghan cases by the San Antonio Court of Civil Appeals (Callaghan v. McGown, 90 S.W. 319; Callaghan v. Tobin, 90 S.W. 328; and Callaghan v. Irvin, 90 S.W. 335, wr. ref. in all cases) are likewise of little value to respondents. This language from the Tobin case describing the nature of the suit is typical of all three cases and demonstrates that they are not in point here:

> "In this suit the petition alleges the case of an officer duly appointed, and in lawful possession of the office, and property appertaining thereto, to which he was appointed by lawful authority, and the threatened interference with him in such possession and his removal therefrom by persons alleged to have *no legal authority therefor and having no title* to the office." (Italics supplied.)

In Ehlinger v. Rankin, Texas Civ. App., 29 S.W. 240, no writ hist., it was held that a temporary injunction could be obtained by the legally elected county clerk to prevent an appointed successor from carrying out the duties of the office without a judicial determination that he (the elected clerk) was not qualified to hold the office. The question was whether the elected clerk had vacated his office under Article 16, Sec. 14 of the Texas Constitution relating to the residence qualifications of civil officers. The Court merely held that this question must be determined by a district court rather than the commissioners' court.

Stockwell v. Parr, Texas Civ. App., 319 S.W. 2d 779, involved a dispute between claimants to an office and is not in point here. Moreover, the judgment in that case was subsequently vacated and the opinion therefore lacks precedential value. Parr v. Stockwell, 159 Texas 440, 322 S.W. 2d 615.

The present cause is in no sense a suit for office between contesting claimants to the title to such office. The cause out of which the present proceedings arose is a statutory ouster suit in which it is contended that a duly elected official should be removed from office because of official "misconduct". Article 5973.

■ We hold that the order purporting to reinstate Cause No. B-77,303 on the docket of the 60th District Court dated June 6, 1962, and the injunctive ancillary orders contained in the decree bearing said date are nugatory and void for the reasons herein set forth and should accordingly be expunged from the records of said 60th District Court.

The appeal from the temporary injunction which the State took to the Court of Civil Appeals from the injunctive order restraining Richard E. Culbertson from acting as sheriff is inadequate to grant the State the relief to which it is entitled. The Court of Civil Appeals in passing upon the question of whether the trial judge abused his discretion in granting the temporary injunction may or may not pass upon the basic order which purports to reinstate Cause No. B-77,303 upon the docket of the 60th District Court. This is the order which brings about the seeming jurisdictional conflict between two co-ordinate courts and is the order together with its incidental injunctive provisions which the State is entitled to have expunged from the record.

We assume that the judge of the 60th District Court will comply with the holdings of this Court herein set out and expunge the order of June 6, 1962 from the records of his Court. In the event he should not so proceed, a writ of mandamus will issue. Lord v. Clayton, 163 Texas 62, 352 S.W. 2d 718.

No motion for rehearing will be entertained.

Mandamus conditionally granted.

JUSTICE SMITH, dissenting.

The writ of mandamus should be denied. The majority opinion has not been written. This dissent is being prepared without waiting for the written views of the majority.

Relator Lindsey recently received the nomination to the office of District Attorney of Jefferson County, Texas, and, upon the resignation of his immediate predecessor, was appointed by the Governor of Texas to fill the vacancy, and is now the District Attorney of the County where this case is now pending. Obviously, he has not been responsible for the actions of those who have been responsible for conducting the trials and proceedings prior to his election and appointment. However, he must realize that the citizens elected him not to persecute, not to "dally" with the courts, but to inform himself at once as to the merits of any case pending or to be investigated to the end that justice is done in that case. It should not require much time for him to realize that a district judge should not be subjected to embarrassment and ridicule merely because the judge exercised his discretion, and declined to temporarily suspend a man from office in a situation where the removal proceedings had remained stagnant for a period of 15 months solely because of the action of the acting district attorney and the Attorney General of Texas in seeking to suspend rather than to remove. It should not require a long period of meditation or the spending of sleepless nights for Mr. Lindsey to realize that the taking of Mr. Meyer's depositions can add nothing to the State's removal proceedings. In other words, if the State does not have facts within its knowledge sufficient to present to a court and jury, and to support a jury finding in its favor, it will never have such facts, The footprints of the State made prior to Mr. Lindsey's appointment indicate very clearly to me that unless Mr. Lindsey gets busy and takes charge of this case, we will have an endless continuation of the turmoil and strife in Jefferson County that has needlessly existed for many months. Mr. Lindsey has a mandate from the people to act with diligence to the end that Meyer or any other public official is given a speedy trial and either cleared of the charges against him or convicted of such charges. As has been heretofore stated, there should be an ending to all litigation and especially that of the type involved here. It is the solemn duty of a State's Attorney to prosecute the guilty and to protect the innocent. In performing this duty he should forever remember that when he invokes the jurisdiction of a particular court he is subject to the same rules of procedure that govern and control other lawyers. I cannot understand how the special prosecutor (former Acting District Attorney) can in one breath admit that Judge Gary has at all times acted in good faith, and then say that

because of Judge Gary's adverse rulings on the State's motion to suspend and its motion to take depositions, he took a nonsuit and filed the same removal suit in the 136th District Court, because it was his opinion that he could not win his case before Judge Gary.

This Court has before it the transcription of the several rulings made by Judge Gary on the many motions presented for his consideration and action thereon. The State took a nonsuit after Judge Gary ruled on its motion to temporarily suspend Mr. Meyer from office. Judge Gary's remarks made in connection with his refusal to temporarily suspend Mr. Meyer demonstrate very clearly that the State would have obtained a fair trial in Judge Gary's court. After stating that he was not, in making his ruling, taking into consideration petitions signed by certain individuals and a petition signed by the Grand Jury, the Court went on to say:

"* * * Your urging of this motion, Mr. Walley, the various acts required of the Sheriff which you mentioned, are all ministerial in nature, except the investigation of his own alleged offenses, and that, I am sure, has been largely accomplished. I realize that there will be delicate situations if he is permitted to remain in office. There may well be serious questions as to his conduct in that office if he is permitted to remain in office. If he is permitted to remain in office, he certainly will be under a greater burden than ever before in all his life to enforce law and order.

"Your motion for temporary suspension mentions only the indictments. If you like, I will read you my exact notation on that. 'Presumption of innocence under the Constitution and laws, not even considering indictments for any purpose in the criminal proceedings.' It seems to me that for this Court to consider the petitions which have been presented by the defendant, I guess that's what you would call them, on the one hand, or the request by the Grand Jury on the other hand, would be NOT to exercise discretion, as the law requires, but rather would be to submit to the discretion of someone else, NOT as the law requires.

"To base the requested action on the indictments alone, it seems to me, would amount to a submission by this court to the discretion of the Grand Jury, rather than exercising discretion myself, as the law requires. In the Laughlin case, I have been meditating for some several days on the part of that opinion that you finally read to me, Mr. Adams, where respon-

dent testified in his own behalf, occupying the witness chair for several days. He was confronted by the witnesses against him. Following the filing of the Master's report, a motion by relators to suspend the respondent from office while the court had the Master's findings under consideration, was denied. As I read that opinion, the action of the Supreme Court permitted that district judge to continue to function as a district judge even though it had before it at that time evidence which was ultimately held sufficient for removal of that district judge. Am I correct in that statement of the opinion?

"MR. ADAMS: That's correct.

"Considering some of the broad discretion that does exist in district judges, I think that is a rather significant milestone in the law. I would point out again, the secrecy of Grand Jury proceedings is as it should be. But the discretion of the Grand Jury, or the discretion of any segment of our public, will not be substituted for the discretion of this court so long as I occupy this bench.

"The motion for temporary suspension is therefore denied."

In the interest of time, I am adopting very largely Judge Gary's brief filed in this Court as my reasons why the writ of mandamus should not issue. His logical and legally sound conclusions against granting the writ cannot be improved upon. Therefore, it is unnecessary to delay the rendition of my decision in this case solely for the purpose of making an independent study of the case, especially in view of the announcement made in open court by the Chief Justice that a decision would in all probability be announced at anytime before the regular date for the formal announcement of orders.

If, as respondent contends, jurisdiction still lies in the 60th Court (Judge Gary's Court), and I think it does, then the only appropriate order to be made by this Court would be one requiring the dismissal of the proceedings in the 136th District Court. Cleveland v. Ward, 116 Texas 1, 285 S.W. 1063. I will first discuss the action of the State in taking a nonsuit.

There can be no doubt but what the 60th District Court first acquired jurisdiction to hear and determine the removal suit against Sheriff Meyer, and actively asserted its jurisdiction at least until May 22, 1962, when Judge Gary's order granting the

State's motion to take a nonsuit was handed down. Unless the actions of the 60th Court were *void*, Judge Gary must prevail.

This Court spoke in Clayton v. Hurt, 88 Texas 595, 32 S.W. 876, 877, discussing jurisdiction, saying:

> "Where a court of general jurisdiction in the exercise of its ordinary judicial functions, renders a judgment in a cause which it has jurisdiction over the person of the defendant and the subject-matter of the controversy, such judgment is never void, no matter how erroneous it may appear, from the face of the record or otherwise, to be."

Citing Renfroe v. Johnson, 142 Texas 251, 177 S.W. 2d 600, the relators say that "absent the filing of the 'cross-action' * * * there can be no question but that the State of Texas had *the absolute* right to take a non suit." Renfroe does not support the position taken by counsel. Another thing, courts are neither blind to outward evidence of bad faith nor powerless to prevent litigants from "dallying" with the court; and, then we must remember that the court had control of its judgments for 30 days after May 22, 1962.

Renfroe, supra, contrary to the assertion of relators that it upholds its "absolute right" to take the nonsuit, is probably the leading case *qualifying* such right, as witness this language quoted by the court from the decision of the Court of Civil Appeals in that case.

> " '* * * In a case tried without a jury, at any time before the decision is announced, the plaintiff may take a nonsuit, but *the privilege given by the statute is not entirely without limitation.* It is the policy of the law to avoid needless litigation, and public policy requires that there be an end to legal controversies. * * * ' "

In the present case, every necessary party was before the court on May 21, 1962, and a definite trial date had been set for June 4, in a proceeding in which issue had been joined for more than a year. "Fearing what would happen, as it actually did happen, Sheriff Meyer contested the taking of the nonsuit, alleging an absence of good faith on the part of counsel representing the State."[1]

---

1. All matters in quotations, unless otherwise indicated are taken from Judge Gary's brief.

Good faith has been held to be a limitation upon the right to take a nonsuit. J. A. Walsh & Co. v. R. B. Butler, Inc., 260 S.W. 2d 889, er. dism. w.o.j, 262 S.W. 2d 952. The prior statute (Art 2182, R.S.) and the present Rule 164, T.R.C.P. has a built-in limitation therein, as witness this language from Walsh:

"* * * However, as said in the case of Renfroe v. Johnson, 175 S.W. 2d 92, Id., 142 Texas 251, 177 S.W. 2d 600, the privilege thus extended to the plaintiff to take a nonsuit is not entirely without limitation. *Indeed,* the rule expressly provides that the action in exercising such right shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief, and *we think the rule implies that a plaintiff,* in the exercise of such right, must act in good faith. * * *" (260 S.W. 2d at 890.)

Walsh, in my opinion and Judge Gary's, is not nearly as strong a case as the one which was presented to Judge Gary below. When the State made its motion to dismiss, the *cross-action* had been on file for months and had been amended after a hearing. *The cross-plaintiff was actively* asserting that the motion on behalf of the State was not made in good faith, but for the purpose of circumventing the jurisdiction of the 60th District Court. Sworn allegations were made that the State having been unsuccessful in procuring the temporary suspension of Sheriff Meyer upon at least two occasions, would change courts and procure his suspension *without a hearing,* and without tender of witnesses or evidence. "In the face of this sworn challenge to the Acting District Attorney, he failed to attend the hearing and his assistant refused to deny the allegations of bad faith."

Judge Gary, although he may well have had doubts in his mind concerning the motives leading up to the motion for the nonsuit, lacked *evidence* upon which could be predicated a *finding* of bad faith on the part of State's Counsel. It has been said that:

"Acting in good faith means acting honestly, innocently, without unlawful purpose, and in the absence of all information or belief of facts that would render such action unconscientious. * * *" (Yarbrough v. Brookins, 294 S.W. 900, 904, er. dism., citing 28 C. J. 716).

Sheriff Meyer, and his counsel, may well have had suspicion that immediately upon the dismissal of the 60th District suit, a new one would be filed in another court and the sheriff suspended without notice, hearing, evidence, or representation by counsel.

Proof of such fact could come only from knowledge of counsel then appearing before Judge Gary. "The *Acting District Attorney absented himself from the proceeding and his assistant refused to disclose the plans of counsel.*" (Emphasis added.)

If "acting in good faith" means acting honestly and innocently and in the absence of information or belief of facts which would render such action unconscientious, as the case cited indicates, subsequent circumstances disclosed beyond peradventure of doubt that the sheriff's predictions and fears were exactly, completely, and unerringly accurate. Nine days after Assistant Acting District Attorney Maynard refused to reply to questions asked in an open hearing which impugned the good faith of his action, we find the Acting District Attorney going before another court on substantially the same pleadings and summarily suspending the sheriff without a hearing.

This would seem to be an appropriate time to recall the Canons of Ethics governing our profession, with particular emphasis on No. 19, binding State's Counsel just as it does every other lawyer:

"The conduct of a member before the court and with other members should be characterized by candor and fairness. * * *"

To say that "candor and fairness" permits a shopping for a forum by counsel for the Sovereign State of Texas under the circumstances shown by this record is to place the emphasis on form rather than substance. "It is plainly apparent that Judge Gary, and every other person who has knowledge of the maneuvers of State's Counsel now knows as a fact (what was suspected before) that the actions in taking the nonsuit were not motivated by candor and fairness; and the only reasonably inference, it is submitted, is to avoid the jurisdiction of the 60th District Court to procure something elsewhere which had been denied on two prior occasions."

### Right to Reinstate Cause

"Judge Gary reinstated the 'original suit' filed by the relators only nine days after he had entered the order granting leave to take the nonsuit. This was done at a time when the acts of the relators had demonstrated beyond question that their motives in seeking the nonsuit were not clean; but, upon the contrary, the evidence of a lack of good faith was then apparent. By that time, the relators had done just what Sheriff Meyer's counsel had predicted they would do — refile in another court and procure his

summary suspension — four days before the date set for trial on the merits in the 60th District Court."

During the thirty-day period following the entry of an order or judgment the district court retains jurisdiction over the same and may take such action thereon as to the court seems proper. See Gulf, C. & S. F. R. Co. v. Muse, 109 Texas 352, 207 S.W. 897, 4 A.L.R. 613. See also, 4 McDonald, Texas Civil Practice, 1421, Sec. 1803; 33 Texas Jur. 2d 657; Dallas Storage & W. Co. v. Taylor, 124 Texas 315, 77 S.W. 2d 1031, 1034; McEwen v. Harrison, 162 Texas 125, 345 S.W. 2d 706.

This Court said in Garza v. Baker, 58 Texas 483, 487:

"* * * In its own peculiar sphere, the district court is itself independent and supreme in its power, and this court has no authority to inquire into or revise its judgments during the period of time when, by its very organization and constitution, it still has the power to alter or to change them. This has been the uniform decision and practice of this court with reference to judgments of the district courts from its first organization.

* * *"

*It is well to remember that the State first invoked the jurisdiction of the 60th District Court.* Having done so, it became subject to the usual rules governing litigation in district courts, one of which is Rule 329-b, TRCP, spelling out the inherent jurisdiction which a trial court has over its own judgments, simply placing a time beyond which the control ceases. Counsel for the State *knew* that at any time during the month following May 22, 1962, the order granting the nonsuit could be revised or set aside — either on the motion of Sheriff Meyer or on the Court's own motion; and, further that the action could be taken "with or without good reason". [Muse, supra].

"We might mention, in passing, that nothing is more calculated to provoke protective action in a judge than open and flagrant efforts to evade, avoid, and flaunt prior judgments of the Court." Having made two efforts to suspend Sheriff Meyer, *without tender of a witness or proffer of admissible testimony,* and during a time when Judge Gary had control over his own order of May 22, 1962, relators brought on the action from which they now seek relief. Had relators waited until June 23, 1962, another situation might be presented. But, proceeding with unseemly haste, it ill behooves them to complain now because a district

court simply invoked its constitutional right to control its own orders so as to protect the jurisdiction of the court.

I next contend that the 60th District Court had jurisdiction over the parties and the subject matter of the cross-action filed by Sheriff Meyer, and that the State was served with Process of the Cross-Action of Meyer.

In September, 1961, after the proceeding had been on file for some six months, Sheriff Meyer filed his cross-action seeking affirmative relief against the relators in whose behalf the removal proceedings were then being maintained, W. G. Walley, Jr., their counsel, the State of Texas. Allegations were made to the effect that the Sheriff was being hampered in the discharge of his duties because of the activities of the several persons mentioned. He sought to "quiet title" to his office together with a permanent injunction against the State and the relators, together with their counsel, to prevent further interference with the performance of his duties. Process was served.

The State, through Mr. Walley, filed a motion to quash the citation upon the ground that (a) the State had been "improperly served" because the service was not in accordance with the Rules of Civil Procedure, none being specified as controlling; (b) the service "was not begun in a lawful and correct manner" as required by the Rules, again no particular rule being cited; and (c) the service was not completed nor was the return made in "a lawful and correct manner" as required by some undisclosed rule. The prayer was that the citation be quashed, set aside and held for naught.

In an amended motion to quash citation and service thereof filed by Mr. Walley, the State *and the other parties defendant* to the cross-action reiterated the same contentions previously made.

By an order dated November 8, 1961, Judge Gary sustained the motion to quash filed by all of the defendants, including the State, and an order to that effect was so entered. Without filing any answer, the State and the relators, still acting under the guidance of Mr. Walley, filed a second amended original petition, on December 29, 1962. Again, as he had done on the prior occasions, Judge Gary granted leave, fixed an answer date, ordered service of process, and set a date for hearing on the motion to temporarily suspend Sheriff Meyer.

The suit for removal of Sheriff Meyer was originally insti-

tuted by and in the name of "The State of Texas, ex rel, George Dishman, et al" as plaintiffs and was filed by W. G. Walley, Jr., "Acting District Attorney of Jefferson County, Texas". Mr. Walley was so "acting" under an appointment issuing out of an ex parte temporary suspension by Judge Harold Clayton in the 136th District Court a few days prior thereto. Service of process on the cross-action was served upon the State by delivering copies thereof to the several relators "acting by and through the said defendants".

If it be conceded that process might have been insufficient to bring the State of Texas into the litigation (a fact which is not necessary for a decision herein), nevertheless, the State, acting through its counsel, filed not one but two motions to quash the process. In so doing, the State came within the full ambit of Rule 122:

"If the citation or service thereof is quashed on motion of the defendant, such defendant shall be deemed to have entered his appearance at ten o'clock a.m. on the Monday next after the expiration of (20) days after the day on which the citation or service is quashed, and such defendant shall be deemed to have been duly served so as to require him to appear and answer at that time, and if he fails to do so, judgment by default may be rendered against him."

An answer was due by said defendants, *including The State of Texas,* on December 4, 1961, and at any time thereafter, a default judgment could have been entered. Mr. Franki, in his notes of decisions under the statute antedating Rule 122, cites many decisions by this court for the proposition that any appearance operates as a general appearance, and it is immaterial whether the motion is sustained or overruled.

This Court has now promulgated new Rule 120a, providing for special appearances, a statutory move. However, this Rule is not effective until September 1, 1962, and it can scarcely be urged that it may be made retroactively effective, for this case only, to September, 1961.

Had the State of Texas ignored the process, but continued to appear in the prosecution of its suit for removal, another question would be presented; and, possibly a different result might be reached. However, having acknowledged the citation, having appeared to move to quash, the State became a party to the cross-action and was before the Court. The cross-action of Sheriff Meyer

was within the jurisdiction of the 60th District Court to hear and determine.

Remember that the State was required to appear and answer the cross-action filed by Sheriff Meyer on December 4, 1961. *It has not filed any pleading, even yet, therein challenging the jurisdiction to hear and determine the cross-action.* Now, and before this Court, for the first time, counsel for the State, including Mr. Walley, who has been in the litigation from its inception, make a collateral attack thereon contending: (a) it is wholly independent and unrelated to the main suit, and is in fact a suit against the State of Texas; (b) there is no claim that the State has given its consent to be sued in said cross-action; (c) the same is "wholly independent of, unconnected with, and has not grown out of the transaction which constitutes the subject matter of the main suit".

The contention that the cross-action is independent and unrelated to the main suit is obviously frivolous and without merit. Counsel for the Sheriff makes it abundantly clear that the State of Texas, acting by the very persons before this Court as relators, has brought many proceedings against him in various courts over the State. He has been indicted in the Criminal District Court of Jefferson County (the indictment being attached to the original petition) and some of the relators were members of that Grand Jury; he has been indicted by the Grand Jury empaneled by the 136th District Court,[2] and members thereof have joined the ranks of "relators" in proceedings against him; criminal cases against him have been transferred to distant counties without a hearing in his home county. These matters are fully pleaded in the Second Amended Original Answer and Cross-action of Sheriff Meyer.

In every instance, The State of Texas has been a party to the proceeding and one or more of the relators in this matter have been involved therein. Many of the instances have occurred since the filing of the cross-action of Sheriff Meyer.

Under these circumstances, the opinion of this Court in Anderson, Clayton & Co. v. State, 122 Texas 530, 62 S.W. 2d 107, is peculiarly appropriate. The suit was brought by the State, "on the relation of James V. Allred, Attorney General, and James V. Allred, as Attorney General" to secure an injunction restraining

---

2. The legality of the action of the 136th District Court empaneling a Grand Jury when one was already in existence in the Criminal District Court was the subject of this Court's opinion in Lord v. Clayton, 163 Texas 62, 352 S.W. 2d 718.

the defendants from further violation of a penal statute regulating trucks, and the recovery of monetary penalties therefor. An application for a temporary injunction having been denied, by agreement of the State, numerous arrests of employees of Anderson, Clayton were made by State officers. Thereupon, the original defendants, Anderson, Clayton filed a cross-bill and procured a temporary restraining order preventing further arrests, making parties thereto many law enforcement officials as well as the members of the Railroad Commission.

Then, the State, when the case was called for trial, took a nonsuit as to its prayer for affirmative relief, and the attention of the trial court was called to the cross-bill. Upon the hearing thereon, a month later, the State then contended that the bill showed upon its face that the relief sought was an injunction against the enforcement of a penal statute without showing a violation of vested property rights. 62 S.W. 2d at 107-108.

This Court, recognizing the rule and that the State may not be sued without its consent, then said:

"But the authorities sustain the further rule that, where a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defense will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense by answer or cross-complaint germane to the matter in controversy * * * (citing cases).

"The state having invoked the jurisdiction of the district court of Nueces County, a court of competent jurisdiction, for a judicial determination of the question as to whether the defendants were subject to the provisions of the foregoing act, and liable for the penalties described therein. It became subject to the same rules as other litigants, except in so far as such rules may be modified in favor of the state by statute or may be inapplicable or unenforceable because of exemptions inherent in sovereignty * * * (Citing cases).

"That court [of competent jurisdiction] at the instance of the state acquired jurisdiction of the parties and subject-matter in controversy, and, the defendants having sought affirmative relief in a cross-bill, the jurisdiction of the court cannot afterwards be defeated by the state upon a plea that the cross-petitioners were seeking an injunction against the enforcement of a penal statute. * * *" (62 S.W. 2d at p. 110).

In Glenn v. McCarty, Texas Civ. App., 75 S.W. 2d 165, no wr. hist., the Court said:

"A court which is prior in jurisdiction may enjoin the bringing of prosecution of interfering suits in other courts, whenever it appears that conflicts of jurisdiction *may* arise. This is so even though the second suit is not identical and is not abatable as one for the same purpose between the same parties."

Relators rely upon the case of Ex Parte Norton, 118 Texas 581, 17 S.W. 2d 1041, by this Court for authority to take a non-suit. I cannot agree that the Norton case has any application in a case such as the instant case where a cross-action has been filed involving matters related to the removal suit. In the Norton case *where no cross-action had been filed,* the Court said:

"Had the Court granted relator (Norton) his legal rights and dismissed the divorce suit, * * * he (the) [Court] would have lost jurisdiction of the divorce proceedings as such, and would have no power or jurisdiction to enter a contempt order for failure of relator to pay alimony, and, had the relator been accorded *the right which was absolutely given him under the statute,* there would have been absolutely no way to enforce the payment of the back alimony claimed by the wife. * * *"

It is my contention that in the present case, if it should appear that there exists some deficiency in Meyer's petition in cross-action, the Court may look to the State's third amended original petition in aid of Meyer's cross-action. In the case of McElyea et al. v. Parker, 125 Texas 225, 81 S.W. 2d 649 (1935), this Court said:

"Even though the plaintiff has taken a nonsuit, his petition may be looked to in aid of the defendant's cross-action seeking affirmative relief."

Bear in mind that this Court has, upon at least two occasions, spoken of removal suits as being penal in character. We said in State v. Reyna, 160 Texas 404, 333 S.W. 2d 832, 835:

"* * * As pointed out by the Court of Civil Appeals, this Court held in 1890 that the ouster suit is 'penal in character, and must be construed as though it were one defining a crime and prescribing its punishment.' State ex rel. Hickman v. Alcorn, 78 Texas 387, 14 S.W. 663, 665."

Here, the State, after bringing indictments against Sheriff Meyer, sought his removal; and, in the time preparatory to a final trial, sought his temporary suspension. It was within the power of the State (and Mr. Walley was counsel in both cases), to proceed to trial on the criminal case. Had he been successful in procuring a conviction, permanent removal of Sheriff Meyer would have followed as a matter of law. See Art. 5968, Vernon's Annotated Civil Statutes. But, no effort was made to procure a trial in the criminal proceedings, either the original or the subsequent ones.

Instead, we find the State, all the while being a party to a proceeding seeking to determine whether or not Sheriff Meyer should be removed from office for official misconduct, with issue joined, persisted in bringing repeated indictments against the sheriff on charges which, if not already within their pleadings in the removal proceedings, were invariably inserted therein shortly after the new indictments.

As was said in the Anderson case, supra:

"* * * To hold, in the face of this record, that the State could invoke the jurisdiction of a court to determine the issues involved in this suit, and during the pendency of the proceedings in that court could, by its agents, institute criminal proceedings in many instances against the defendants, as was done here, upon the very issue then pending in that court for determination, would be repugnant to the well-settled rules announced in the foregoing opinions * * *"

The fact that Sheriff Meyer would continue to draw his pay during any period of suspension and would not sustain pecuniary injury if he were suspended does not alter my view. Judge Brown, speaking for this Court in Terrell v. Greene, 88 Texas 539, 31 S.W. 631, 634, said:

"* * * When an officer is denied the privilege of discharging the functions of his office, he suffers a wrong which cannot be compensated merely by the payment of fees which might have been derived from the discharge of the duties of the office. A legal and moral obligation rests upon every officer to discharge the duties of his office, independently of the question of compensation. Compensation is an important matter to the officer, as furnishing him the means of supporting himself, while engaged in a public duty, but to every honorable man there is more than simple pecuniary compensation; there is

that which attends to the faithful discharge of a public duty. The fact that Terrell might have recovered from the county commissions allowed him by law would not prevent him from demanding that he should be lawfully admitted to the discharge of the duties of the office to which the people of Tarrant County had elected him. * * *"

Relators in this case have filed against the Sheriff civil proceedings in the 60th District Court embodying the substance of indictments in the Criminal District Court. "Failing in the effort to suspend him temporarily, they took another swing with an indictment in the 136th Court which was transferred to the Criminal District Court; and, again, and for the third time, they procured indictments against the Sheriff [*which were immediately transferred to Williamson County and just as promptly remanded by Judge Wood to the 136th Court of Jefferson County*] where they still remain, albeit they are embodied in the removal proceedings."

Definitely, the cross-action of Meyer to prevent molestation and harrassment presents a justiciable question for consideration by the Court. Certainly, it arises out of the activities of the small group of relators and their counsel. It appears to me to be repugnant to the sense of justice to see such matters continue unchecked.

This case is in no manner analagous to State v. Ferguson, 133 Texas 60, 125 S.W. 2d 272, because there Judge Ferguson had granted injunctions restraining state officials from enforcement of highway restrictive user statutes ["not an open question", 125 S.W. 2d at p. 274] and the State procured the issuance of the appropriate writs to prevent this interference with law enforcement. We have no such case presented here. On the other hand, ours is one much more similar to the fact situation presented in University of Texas v. Morris. 162 Texas 60, 344 S.W. 2d 426. Three suits with Morris as plaintiff pending in Travis County were consolidated for trial; and, Morris seeking to delay the consolidated trial until he could try a suit in New Mexico against one of the defendants, was enjoined from proceeding in the New Mexico case until the consolidated case had been disposed of. The Court of Civil Appeals reversed (337 S.W. 2d 169) and this Court, after carefully considering the matter, reinstated the judgment of the trial court.

*Order of Reinstatement Not Void.*

Relators, in the proceeding before this Court labor under the burden of showing that Judge Gary had no jurisdiction and that his orders were *void*. In so stoutly maintaining their position, the relators overlooked the fundamental principle of law that an order of the court of general jurisdiction in a matter wherein it has acquired jurisdiction over the subject matter and of the parties is presumptively valid, certainly against a collateral attack. See State Board of Insurance v. Betts, 158 Texas 83, 308 S.W. 2d 846. Also consider the cases following Cleveland v. Ward, 116 Texas 1, 285 S.W. 1063, as well as the cases therein cited. One of those following Cleveland v. Ward, is Barrier v. Lowery, 118 Texas 227, 11 S.W. 2d 298, rehearing denied, 13 S.W. 2d 688. That court in reviewing the holding in Cleveland v. Ward said:

"* * * The decision in that case clarified the law of this state with reference to the jurisdiction of a district court to enter any order or take any action in a case where the jurisdiction of another district court has previously attached to the subject-matter and the parties involved therein. *It is distinctly held that jurisdiction of a district court once acquired cannot be destroyed, diminished, or suspended by any one of the parties,* pending an action in another court, and any judgment or order of the latter is void so far as it conflicts with any judgment or order of the court first acquiring jurisdiction. * * *" 11 S.W. 2d 298. (Emphasis ours.)

The rule is firmly entrenched in Texas jurisprudence that when a court of general jurisdiction has acquired jurisdiction of a cause for one purpose it will retain jurisdiction as to all questions which are properly involved in the suit or which may become involved therein. See Chambers & Thigpen v. Cannon, 62 Texas 293; Witt v. Kaufman, 25 Texas Supp. 384; Willis v. Gordon, 22 Texas 241; 15 Texas Jur. 2d 479 Courts, par. 53; Freeman v. Freeman, 160 Texas 148, 327 S.W. 2d 428.

In the *second Betts case,* State Board of Insurance v. Betts, 158 Texas 612, 315 S.W. 2d 279, 281, this Court said:

"It is recognized that this Court's power or control over the orders of a district or county court is extremely limited. We have no general supervisory authority over proceedings pending in trial courts. Since our jurisdiction is primarily appellate, the correction of errors made in the course of a trial or other proceedings must, as a general thing, await the entry of a final judgment or concluding decree. A well settled

exception to this general rule is that which permits this Court through an exercise of its original jurisdiction to order a trial court to vacate a *void* order and expunge the same from its records. * * *" (315 S.W. 2d at p. 281 emphasis by the Court.)

See also the *first Betts case,* supra; Ex parte Tyler, 152 Texas 602, 261 S.W. 2d 833; Ex parte La Rocca, 154 Texas 618, 282 S.W. 2d 700, 703; Mitchell v. Mitchell, 233 S.W. 2d 187, no writ history; Frazier v. Hanlon Gasoline Co., 29 S.W. 2d 461, er. ref.; Burdett v. Silsbee, 15 Texas 604, 619.

Before turning to still another reason why relators should not prevail herein, *the doctrine of clean hands,* it might be well to consider just what it is relators seek to do in this protracted litigation. Obviously, they seek the *temporary* suspension of the Sheriff as the end result of the litigation. For, if they were seeking his removal, the way has been open to procure trials of any one of the many criminal cases brought; and, despite repeated insistence on the part of Judge Gary, no announcement of ready to proceed to trial on the merits has ever been made unconditionally. Rather, repeated efforts have been made to "temporarily suspend" Sheriff Meyer.

We should consider the statutory authority for *removal* of officers, as distinguished from temporary suspension, in Art. 5968, Vernon's Annotated Civil Statutes, it is only a *conviction by a petit jury* which authorizes the removal of an official. Vernon lists an Attorney General's Opinion (No. O-2619, 1940) as holding that a conviction of a school trustee of a felony in a nonjury trial does not constitute an automatic removal from office. Nevertheless, in so far as the school trustee was concerned, the judgment of conviction of a felony was just as binding and effective as one based upon a verdict by a petit jury.

Certainly, automatic removal not following a judgment of conviction by a court, as distinguished from a conviction by a petit jury, it is apparent that a mere indictment by a Grand Jury constitutes no ground for suspension, *except as a matter of the exercise of judicial discretion.*

The Legislature, in a single-sentence enactment, using only plain English words of clear and unmistakable meaning, has spelled out how, other than a conviction by a petit jury, an officer can be removed. It is Article 5971, reading:

"In every case of removal from office for the causes named

in the preceding article, the cause or causes thereof shall be set forth in writing, *and the truth of said causes be found by a jury."*

Putting these two articles together, and they constitute the only statutory authority for removal of county officials, it is crystal clear that *no district judge, without the intervention of a jury, can remove a county official from office.*

With reference to suspension, a great deal of discretion is vested in the district judge. The only power to suspend is to be found in the first few lines of Art. 5982, Vernon's Annotated Civil Statutes, which reads:

"At any time after the issuance of the order for the citation, as herein provided, the District Judge may, *if he sees fit,* suspend temporarily from office, the officer against whom the petition is filed. * * *"

This statute is permissive, not mandatory, and is to be exercised with discretion confided by law in the district judge. The framers of the Constitution, with the fresh memory of the Reconstruction Period, wrote into our basic law the provision for removal only upon a jury verdict (Art. V, Sec. 24), making it certain that such power was never to be conferred on any one man, even though he be a judicial officer. Considering the entire removal procedure, I submit that it was the intention of the Legislature to cause the power to remove to be vested, ultimately, in the same body having the power to place in office: the citizenship as represented on the petit jury and in the polling place.

So, it is not unreasonable to say that temporary suspensions should not follow automatically the filing of a petition for removal. Rather, it should be upon the basis of facts presented in open court in an adversary proceeding at which both parties may be heard, witnesses observed, and an informed judge put in position to exercise the discretion confided to him.

When the State undertakes the task of expelling what it considers an unfaithful officer from his position of trust, it should be ready and able to proceed into open court armed with the evidence to sustain the position taken; and, there in accordance with the rules of law and evidence, at least make a prima facie proof of its allegations. In view of the admissions of the State made here in open court that Judge Gary is an honorable Judge

591

and has at all times acted in good faith, and, in view of the courageous actions of Judge Gary, as reflected by this record, it can reasonably be said that at any time during the 15 months this case was actively before him, the State would have received such orders as were justified by the evidence. But, no evidence was offered, no witnesses produced, no proof tendered—just pleadings. And, under these circumstances, judicial discretion was exercised in favor of the officer who had been elected by the citizens. He was and is entitled to remain in office until one of two things occurred: (a) proof warranting his suspension was presented; or (b) a petit jury found the truth of the charges brought against him.

*Relators Had An Adequate Remedy At Law Through*
*An Appeal to the Court of Civil Appeals.*

The relators herein had a perfect legal right to test the validity of the injunction order issued by Judge Gary by a single appeal therefrom within the 20-day period authorized by law. As a matter of fact the appeal has been perfected to the Court of Civil Appeals for the Ninth Supreme Judicial District at Beaumont, Texas. Apparently, however, the State is allowing this appeal to remain dormant just as it has failed to prosecute in good faith the removal suit and the criminal indictments pending against Meyer. Relator Lindsey does not deny that on June 21, 1962, he addressed the following letter to the District Clerk:

"In view of the fact that the Honorable Supreme Court of the State of Texas has acquired jurisdiction of the above entitled and numbered cause by allowing the State of Texas to file its petition for Writ of Mandamus and Prohibition in said cause, *the State of Texas* will not proceed to pursue its appeal to this Honorable Court of Civil Appeals, Ninth Judicial District of Texas.

"Please submit cost statements for the preparation of the transcript, pursuant to our letter of June 13, 1962, to this office."

But, relators labor under still another impediment, the ancient and honored rule of clean hands. I take the liberty of quoting from this Court's opinion on the subject, somewhat copiously because it illustrates the position in which the relators now find themselves. In Westerman v. Mims, 111 Texas 29, 227 S.W. 178, 181, Judge Greenwood said:

"Our statute empowers this Court to issue writs of mandamus 'agreeable to the principles of law regulating such writs.' Article 1526, Vernon's Sayles' Texas Civil Statutes.

"Among the principles regulating the issuance of writs of mandamus, which cannot be regarded otherwise than as clearly settled, is one which is thus stated in Section 1380 of Spelling's Extraordinary Relief:

" 'While the remedy by mandamus is not equitable, but strictly legal, yet by analogy to the principles prevailing in courts of equity it is a uniform requirement that the relator in seeking this remedy must come into court with clean hands.'

"To the same effect, see Section 26, High's Extraordinary Legal Remedies.

"Justice Lamar, speaking for the Supreme Court of the United States, announces the rule to be that—

" 'Mandamus * * * will not be granted in aid of those, who do not come into court with clean hands,' since the writ issues 'to remedy a wrong, not to promote one.' Turner v. Fisher, 222 U.S. 209, 32 Sup. Ct. 38, 56 L. Ed. 165.

"See, also, Nevell v. Terrell, 99 Texas 356, 87 S.W. 659, 89 S.W. 971; Hale v. Risley, 69 Mich. 598, 37 N.W. 570; U.S. ex rel Stevens v. Richards, 33 App. D.C. 418, 419.

"The rule that he who seeks a mandamus must present his application with clean hands has no different meaning from the general maxim in equity that 'he who comes in to equity must come with clean hands.' Prof. Pomeroy states the meaning of the maxim as follows:

" 'It says that whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle in his prior conduct, then the doors of the court shall be shut against him in limine; the court will refuse to interfere in his behalf, to acknowledge his right, or to award him any remedy.'

"He adds:

" ' It is not alone fraud or illegality which will prevent a suitor from entering a court of equity; and really unconscientious conduct, connected with the controversy to which he is a party, will repel him from the forum whose foundation is good conscience.' 1 Pomeroy's Equity Jurisprudence. Secs. 397, 404.

"Having concluded that the petition of relators is grounded on conduct amounting to an invitation to, and hence participation in, an act violative of good faith and of conscience, it follows that relators did not come into court with clean hands, as required to entitle them to the relief prayed for, and hence the mandamus is denied."

In addition to the above enumerated facts, I call attention to the following: After taking the nonsuit, the State on May 31, 1962, (only 9 days afer nonsuit) acting through two assistants to the Acting District Attorney, W. G. Walley, Jr., appeared together at the filing window of the District Clerk's office with a number of papers, including the new removal suit. These attorneys inquired of Deputy District Clerk Gowling what court was open. According to the Clerk's affidavit the following rather unusual events transpired: The Clerk checked and stated the 58th District Court was open for filing of suits. (The custom was to file with the courts in rotation.) Thereupon, one of the assistants handed the Clerk a petition in a criminal case and it was filed in the 58th Court. Then inquiry was made as to the next open court for filing, and when told that the next was the 60th Court, one. of the assistants handed to the Clerk another case and it was filed in the 60th. Then, Carl Griffith, one of the assistants, stated that the next court open ought to be the 136th and when the Clerk replied in the affirmative, Griffith handed to the Clerk a petition which proved to be the removal suit by the State against Sheriff Meyer.

All of the conduct and actions herein outlined indicate a conscious and deliberate disrespect for Judge Gary as the result of Gary's action in refusing to suspend Meyer without evidence, and indicates very clearly to me, and no doubt convinced Judge Gary, that here was a masterpiece in the art of trifling with the administration of justice. The acts of the relators in leading Judge Gary to believe on May 17, 1962, that they would be ready for trial in the 60th Court on June 4, 1962, their filing of a nonsuit immediately thereafter, their refusal to testify under oath as to their good faith in taking a nonsuit, their immediate filing of a new suit in the 136th Court do not rest upon the

foundation of good conscience, and the State should be compelled to prosecute its appeal from Judge Gary's rulings to the Court of Civil Appeals at Beaumont, Texas.

It must be remembered that we have a statute in Texas, Article 5986, which provides that "No officer in this State shall be removed from office for any act he may have committed prior to his election to office." This Article applies to actions for removal of officers. The fact that Meyer was last elected Sheriff of Jefferson County, Texas, on November 8, 1960, after the alleged acts of misfeasance, it was not an abuse of discretion for Judge Gary to refuse to temporarily suspend Meyer, and Judge Gary's actions were with due regard to the Constitution and laws of Texas.

Judge Gary's order reinstating the removal suit should be upheld, and the case should proceed to trial without delay. In any event, the Sheriff is entitled to proceed to trial on his cross-action without interference by orders of other courts. The State should realize that it has filed a removal suit and not a suspension suit, and it owes the public a duty to act promptly. In the event that Judge Gary should conclude that under all the circumstances he should recuse himself, then that should be made known within a reasonable time in order that the Presiding Judge of the Administrative District may immediately assign another Judge to the 60th District Court to preside in the trial of this case. Since writing this dissent, I have read the majority opinion, and I see nothing in that opinion that would prevent a trial of the cross-action even though the new removal suit is never tried in Jefferson or any other county.

I would deny the petition for writ of mandamus.

Opinion delivered July 2, 1962.